Ardiss D. ARMSTRONG,
Plaintiff/Appellant,

v.

Warren C. NEEL, in his official capacity
as Commissioner of the Tennessee De-
partment of Employment Security; and
Tennessee Continental Corporation,
Defendants/Appellees.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Nov. 28, 1986.

Permission to Appeal Denied by
Supreme Court March 9, 1987.

Marion E. Hilt, Columbia, for plaintiff-
appellant.

W.J. Michael Cody, Atty. Gen. and Re-
porter, Dianne Stamey, Asst. Atty. Gen.,
Nashville, for defendants-appellees.

OPINION

KOCH, Judge.

This appeal involves a claim for unem-
ployment compensation benefits filed by a
metal painter who was discharged for
threatening a co-worker. The Department
of Employment Security determined that
the claimant was ineligible to receive unem-
ployment compensation benefits because he
had been discharged for misconduct con-
nected with his work. The Chancery Court
for Maury County affirmed the depart-
ment's decision. The claimant has perfect-

ed this appeal. He asserts that he did not receive a proper administrative hearing concerning his claim and that the department's decision was arbitrary, capricious and not supported by substantial and material evidence. We have determined that the claimant is not disqualified to receive unemployment compensation benefits and, therefore, reverse the judgment of the trial court.

## I.

### The Discharge of the Claimant

The Tennessee Continental Corporation hired Ardiss D. Armstrong on May 14, 1984. He worked as a metal painter at the company's plant in Centerville. Mr. Armstrong was a twenty-four year old high school graduate when he was hired. He completed his sixty day probationary period, although attendance problems initially jeopardized his permanent employment with the company.

The incident that caused Mr. Armstrong to be discharged occurred on September 11, 1984 during Mr. Armstrong's afternoon break. He and other workers, including a welder named Terry Daniels, were assembled in the breakroom. Mr. Armstrong was singing to himself. Mr. Daniels thought that Mr. Armstrong was "making an annoying racket," and so he shouted to him across the breakroom to "shut your God damn mouth and I mean now."

Mr. Daniels left the breakroom to drink a soft drink. The tenor of Mr. Daniels' remarks angered Mr. Armstrong, and so he followed Mr. Daniels out of the breakroom. During their brief confrontation, Mr. Armstrong said that he was not a child and that Mr. Daniels did not have to talk to him like one. He asked Mr. Daniels to talk to him like he was a human being and told him that he "would whip his ass if he talked [to] me that way again." Nothing else transpired between the two men. They returned back to work without further incident.

Mr. Daniels' account of the incident differed only in his characterization of Mr. Armstrong's remarks. In Mr. Daniels' words:

> After I went outside and sit down I was drinking a coke. Mr. Armstrong gets up in my face with this slang racial jive and starts carrying on. And put his finger in my face and told me that he was going to whip my butt.

Mr. Daniels complained about Mr. Armstrong to the union steward. Two days later, the union steward informed the plant manager about the incident and told him that "you need to do something about the problem before we have a fight break out." The plant manager talked with Mr. Daniels and two other men who witnessed the incident. Then he called Mr. Armstrong into his office and informed him that he was discharged for threatening a fellow employee. This upset Mr. Armstrong, and so the plant manager asked his general foreman to escort Mr. Armstrong home.

Mr. Armstrong filed a claim for unemployment compensation benefits which was denied by the Department of Employment Security. He appealed. An appeals referee conducted a hearing on October 30, 1984 and heard the testimony of Mr. Armstrong, Mr. Daniels, the plant manager, and a co-worker testifying for Mr. Armstrong. Neither party was represented by counsel. The appeals referee determined that Mr. Armstrong had been terminated for work-related misconduct and affirmed the department's denial of the claim.

Mr. Armstrong then obtained the services of Legal Services of South Central Tennessee, Inc. to file an appeal with the Board of Review. His lawyer's request for a transcript of the hearing before the appeals referee was ignored, and the Board of Review summarily affirmed the referee's decision. Mr. Armstrong's lawyer discovered that the Board had rendered its decision only after he inquired into the status of the case. He obtained a copy of the transcript of the hearing and immediately requested that the Board rehear the case. The Board denied the petition to rehear.

## II.

### *The Standard of Review*

█ Tenn.Code Ann. § 50–7–304(i)(2) contains the standards by which the courts [1] are required to review administrative decisions involving claims for unemployment compensation. When the evidentiary basis of a decision involving an unemployment compensation claim is attacked, Tenn.Code Ann. § 50–7–304(i)(2)(D) and (E) direct the courts to review the entire record, including any proof that fairly detracts from the agency's decision, to determine whether it is arbitrary, capricious, characterized by an abuse of discretion, or unsupported by substantial and material evidence.[2]

█ Tennessee's unemployment statutes were enacted for the benefit of unemployed workers. Therefore, the Tennessee Supreme Court has held that they should be construed liberally in the employee's favor and that the disqualification provisions in the statutes should be construed narrowly. *Weaver v. Wallace,* 565 S.W.2d 867, 869–70 (Tenn.1978). The employer has the burden of proving that an employee should be disqualified from receiving unemployment compensation benefits. *Weaver v. Wallace,* 565 S.W.2d 867, 870 (Tenn.1978).

## III.

### *The Misconduct Disqualification*

#### A.

One of the most common grounds used to disqualify a claimant from receiving benefits appears at Tenn.Code Ann. § 50–7–303(a)(2)(B) which provides:

(a) A claimant shall be disqualified for benefits:

\* \* \* \* \* \*

(2)(B) If the commissioner finds that the claimant has been discharged from his most recent work for misconduct connected with his work (other than the gross misconduct mentioned in subdivision (a)(2)(A) of this section.)

The statute does not define "misconduct connected with his work," and thus, the courts have been left to interpret its meaning on a case by case basis. *Wallace v. Stewart,* 559 S.W.2d 647, 648 (Tenn.1977); *Troutt v. Carl K. Wilson Co.,* 219 Tenn. 400, 406, 410 S.W.2d 177, 180 (1966); and *Jackson v. Bible,* 611 S.W.2d 588, 590–91 (Tenn.Ct.App.1980).

There are few reported decisions in Tennessee to aid the department, the claimants, and the courts in determining what "misconduct connected with his work" means. These decisions provided only the broadest outline of the meaning of this provision. We learn from *Troutt v. Carl K. Wilson Co.,* 219 Tenn. 400, 404–05, 410 S.W.2d 177, 179 (1966) that the statute distinguishes between "gross misconduct" and "simple misconduct" and that simple misconduct is misconduct that is "lesser than gross misconduct." Later, the Tennessee Supreme Court added that the misconduct must amount to a "breach of duty owed to the employer, as distinguished from society in general." *Weaver v. Wallace,* 565 S.W.2d 867, 870 (Tenn.1978). Finally, the Tennessee Supreme Court held recently that fault should be considered when determining whether an employee has engaged in misconduct connected with the work. *McClellan v. Bible,* 699 S.W.2d 555, 556 (Tenn.1985). When these precedents are read together, they stand for the proposition that simple misconduct must at least be intentional conduct that materially breaches a duty the employee owes to the employer.

---

1. The appellate courts use the same review standards employed by the trial courts. See *Metropolitan Government of Nashville and Davidson County v. Shacklett,* 554 S.W.2d 601, 604 (Tenn. 1977) and *DePriest v. Puett,* 669 S.W.2d 669, 673 (Tenn.Ct.App.1984). Unlike other civil appeals governed by Tenn.R.App.P. 13(d), there is no presumption of correctness in these cases. *Wallace v. Sullivan,* 561 S.W.2d 452, 453 (Tenn. 1978).

2. For the purposes of Tenn.Code Ann. § 50–7–304(i)(2)(E), substantial and material evidence consists of relevant evidence which a reasonable mind might accept to support a rational conclusion and which furnishes a reasonably sound basis for the action being reviewed. *Southern Railway Co. v. State Board of Equalization,* 682 S.W.2d 196, 199 (Tenn.1984) and *Pace v. Garbage Disposal District of Washington County,* 54 Tenn.App. 263, 267, 390 S.W.2d 461, 463 (1965).

Other panels of this Court, heeding the Tennessee Supreme Court's direction to develop the meaning of Tenn.Code Ann. § 50–7–303(a)(2)(B) on a case by case basis, have adopted the misconduct standard contained in *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636 (1941). The Wisconsin Supreme Court held in this case that "misconduct connected with his employment" was limited to:

> conduct evincing such wilful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertences or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute. *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636, 640 (1941).

Regrettably, our decisions adopting and applying this standard are unpublished,[3] and thus their precedential value is clouded because they have not received the imprimatur of the Tennessee Supreme Court.

▮ The appropriateness of applying the *Boynton Cab Co. v. Neubeck* misconduct standard has recently been questioned because of the differentiation between simple misconduct and gross misconduct in Tennessee's statutes. Pollack, *Ain't Misbehavin', Or What is Misconduct in Tennessee Under Employment Security Law?*, 22 Tenn.B.J. 17, 19 (1986). However, we see no reason to depart from our practice of using the *Boynton Cab Co. v. Neubeck* standard to define simple misconduct. This standard is the one most widely accepted throughout the country, see Sanders, *Disqualification for Unemployment Insurance*, 8 Vand.L.Rev. 307, 334 (1955), even in those jurisdictions that have dual levels of misconduct like Tennessee. This case involves only a finding of simple misconduct. No gross misconduct issue has been raised, and therefore, we need not elaborate further on the difference between simple misconduct and gross misconduct.

**B.**

▮ We do not condone the conduct of either Mr. Armstrong or Mr. Daniels. However, we do not believe that Mr. Armstrong's conduct materially interfered with his employer's business. While it may have provided the company with an adequate basis to discharge him, we have concluded that this was an isolated incident that does not warrant denying Mr. Armstrong unemployment compensation pursuant to Tenn.Code Ann. § 50–7–303(a)(2)(B).

Mr. Armstrong did not precipitate this incident. It was initiated by Mr. Daniels' demeaning comments made in front of Mr. Armstrong's co-workers. Mr. Armstrong's comments were directed toward a co-worker, not a supervisor, in a work environment where less than decorous language could be expected. His threats were clearly made in the heat of the moment and were conditional in nature. The incident was brief and did not disrupt the work at the plant. While there was a company rule that "fighting, threatening, or abusing employees" could be grounds for termination, Mr. Armstrong had never been warned by his superiors that this type of conduct would result in his immediate discharge.

The Board of Review itself has determined that similar conduct did not warrant denial of unemployment compensation. The Board determined that an employee

**3.** *Clemons v. Bible,* Hamilton Eq., slip op. at 4–5 (Tenn.Ct.App. Dec. 4, 1981), 1C Unempl.Ins.Rep. (CCH) ¶ 8284; *Gaston v. Bible,* App. No. 82–100–II, slip op. at 8–10 (Tenn.Ct.App. Aug. 20, 1982), 1C Unempl.Ins.Rep. (CCH) ¶ 8291; *Miller v. Bible,* Maury Eq., slip op. at 35 (Tenn.Ct.App. Mar. 9, 1984), 1C Unempl.Ins.Rep. (CCH) ¶ 8311; *Brown v. Yount,* Wash.Eq., slip op. at 7 (Tenn.Ct.App. Oct. 24, 1984), 1C Unempl.Ins.Rep. (CCH) ¶ 8313; and *Whiting v. Yount,* Shelby Eq., slip op. at 6 (Tenn.Ct.App. Mar. 7, 1985), 1C Unempl.Ins.Rep. (CCH) ¶ 8315.

who was fired after threatening to "whip" a co-worker was not disqualified pursuant to Tenn.Code Ann. § 50–7–303(a)(2)(B) when it was shown that the co-worker brought on the altercation. See Board of Review, Dec. No. 40–BR–15 (3/9 UCIS Ben. Ser., 4383—Tenn.R), 1C Uempl.Ins.Rep. (CCH) ¶ 1970.654.

Likewise, courts of other jurisdictions, adopting the *de minimis* rationale, have found that a provoked employee's conditional threats or other conduct which did not materially interfere with the work did not provide a basis to deny unemployment compensation benefits. *Davis v. Florida Unemployment Appeals Commission*, 472 So.2d 800, 802 (Fla.Dist.Ct.App.1985); *Budding v. Iowa Department of Job Service*, 337 N.W.2d 219, 222–23 (Iowa Ct.App. 1983); *Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142, 145 (Minn.1984); *Oman v. Daig Corp.*, 375 N.W.2d 533, 538 (Minn.App.1985); *First Family Federal Savings and Loan Assoc. v. Unemployment Compensation Board of Review*, 68 Pa.Commw. 578, 449 A.2d 870, 872–73 (1982); and *Nehi Bottling Co. v. Unemployment Compensation Board of Review*, 27 Pa.Commw. 251, 366 A.2d 594, 596 (1976).

## IV.

The judgment of the trial court is reversed. The case is remanded to the trial court for the entry of an order permitting Mr. Armstrong to draw unemployment compensation benefits. The costs of this appeal are taxed against the Department of Employment Security.

LEWIS and CANTRELL, JJ., concur.