IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

_____

| | |
|---|---|
| **DONALD D'AMICO,** | FROM THE HENDERSON |
| | COUNTY CHANCERY COURT |
| Petitioner-Appellant, | No. 10980, THE HONORABLE |
| | JOE C. MORRIS, CHANCELLOR |
| Vs. | C.A. No. 02A01-9705-CH-00097 |
| | ***AFFIRMED*** |
| **JAMES DAVENPORT,** | |
| **COMMISSIONER, Tennessee** | Connie Westbrook of Memphis |
| **Department of Employment** | For Appellant |
| **Security, and JOHNSON** | |
| **CONTROLS, INC.,** | John Knox Walkup, Attorney General |
| | And Reporter; Douglas Earl Dimond, |
| | Assistant Attorney General |
| Respondents-Appellees | For James Davenport |
| | |
| | Paul E. Prather, Steven W. Likens; |
| | Kiesewetter Wise Kaplan Schwimmer |
| | & Prather, PLC of Memphis For |
| | Johnson Controls, Inc. |

FILED

October 31, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

_____

MEMORANDUM OPINION[1]
_____

*CRAWFORD, J.*

This appeal involves the denial of unemployment compensation benefits. Mr. Donald D'Amico appeals the decree of the chancery court affirming the denial of benefits by the Board of Review of the Tennessee Department of Employment Security (TDES).

Donald D'Amico was an employee of Johnson Controls, Inc. (JCI) from May 1993 to June 1996. Mr. D'Amico is partially disabled as the result of polio suffered as a child. By numerous verbal requests and by letter of April 28, 1995, Mr. D'Amico requested that JCI make certain modifications to his work station in order to accommodate his disability. Mr. D'Amico's requests apparently went unanswered because in October 1995 he filed a charge of discrimination with the Tennessee Human Rights Commission and the Equal Employment Opportunity Commission (EEOC). Mr. D'Amico alleges that as a result of requesting workplace accommodations for his disability he has been subject to harassment and retaliation by JCI management. Mr. D'Amico asserts that this harassment resulted in his missing two weeks of

_____

[1]Rule 10 (Court of Appeals). Memorandum Opinion. -- (b) The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

work for "medical and psychological intervention."

Upon return to work on July 12, 1996, Mr. D'Amico was called into the office of the personnel manager, Danny Azbill, and was asked to fill out an employment application which was absent from his file and to provide a doctor's note explaining his absence. The employment application is used to provide emergency contacts, references, etc., as well as information to be used for advancement purposes. Mr. D'Amico stated that when called in to Mr. Azbill's office he expected to be fired on the spot. He refused to fill out the employment application. When asked if he understood the consequences of refusing a reasonable request of management, Mr. D'Amico allegedly asked to be terminated that day and be allowed to clean out his locker. Mr. Azbill suspended Mr. D'Amico that day and told him to report back to work the next day for the final decision of management. Mr. D'Amico never returned to work. He received a letter dated June 18, 1996 notifying him that his employment with JCI had been terminated effective June 13, 1996.

Mr. D'Amico filed another charge of discrimination with the EEOC on June 18, 1996 alleging retaliatory discharge, and filed for unemployment compensation benefits on June 20. His claim for unemployment benefits was denied. This decision was appealed, and after a hearing before the Appeals Tribunal, the Tribunal affirmed the denial of benefits and made the following findings of fact and conclusions of law:

> FINDINGS OF FACT: Claimant's most recent employment prior to filing this claim was with Johnson Controls, Inc., from May 9, 1993, until June 12, 1996, when he was discharged. Claimant had worked for this employer through a temporary agency for three months before being hired by the employer on a permanent basis on May 9, 1993. The employer does have a formal written application that is to be filled out by potential employees and is retained in the personnel file of those who are hired. There was a dispute between the parties as to whether or not claimant had originally completed and returned the application, but the evidence is clear that claimant's personnel file did not contain a completed application. On June 12, 1996, claimant was asked to complete such an application. It is three pages long and the experience of the employer is that it takes thirty minutes to complete. Claimant had earlier conflicts with the employer and had even filed a pending E.E.O.C. suit against them under the Americans with Disabilities Act. He was upset with the employer and refused to complete the application even after several requests. Instead of discharging claimant immediately, he was suspended and asked to come back the next day. Claimant decided that he was not going to fill out the application, so he did not return the next day and was mailed a letter of termination.

> CONCLUSIONS OF LAW: An employee owes a duty to the employer to comply with reasonable requests, and failure to do so may be work connected misconduct within the meaning of TCA § 50-7-303(a)(2). It is not unreasonable for an employer to ask an employee to complete an application to replace one that is missing for whatever reason. The evidence will not support a finding that the employer was making the request either as a form of harassment of claimant because of the E.E.O.C. suit or to obtain information to use against him in that suit. Claimant has shown no reasonable [sic] request from the employer. **The appeals Tribunal finds that his discharge was for work connected misconduct within the meaning of TCA § 50-7-303(a)(2)**. The agency decision denying this claim is affirmed. (emphasis added)

The Board of Review affirmed the decision of the Appeals Tribunal and denied Mr. D'Amico's subsequent request for a rehearing. The chancery court granted certiorari and, after a hearing, affirmed the denial of benefits. This appeal followed.

Mr. D'Amico appeals the judgment of the chancery court and presents two issues for review: (1) Whether there is substantial and material evidence to support the finding of the Board of Review that Mr. D'Amico's refusal to follow management instructions was misconduct sufficient to warrant termination; and (2) Whether this misconduct properly disqualifies Mr. D'Amico from receiving benefits as a matter of law.

The standard for judicial review of a TDES Board of Review decision regarding unemployment benefits is set forth in T.C.A. § 50-7-304(i) which provides in pertinent part:

> (2) The chancellor may affirm the decision of the board or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> > (A) In violation of constitutional or statutory provisions;
> > (B) In excess of the statutory authority of the agency;
> > (C) Made upon unlawful procedure;
> > (D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> > (E) Unsupported by evidence which is both substantial and material in the light of the entire record.
> (3) In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that of the board of review as to the weight of the evidence on questions of fact.

T.C.A. § 50-7-304(i) (Supp. 1997). This Court must apply the same standard as the trial court in reviewing the trial court's decision in an unemployment compensation case. *Ford v.*

3

*Traughber*, 813 S.W.2d 141, 144 (Tenn. App. 1991). Therefore, in reviewing TDES's findings of fact, we are constrained to a determination of whether there is substantial and material evidence to support the findings. "Substantial and material evidence is such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Southern Ry. Co. v. State Bd. Of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984) (citations and internal quotations omitted). If the record contains such evidence, we are limited to a review of the questions of law presented. *Perryman v. Bible*, 653 S.W.2d 424, 429 (Tenn. App. 1983).

An individual is disqualified from receiving unemployment compensation benefits where the "commissioner finds that a claimant has been discharged from such claimant's most recent work for misconduct connected with such claimant's work." T.C.A. § 50-7-303(a)(2) (Supp. 1997). The phrase "misconduct connected with such claimant's work" is not defined by the statute, but must be interpreted by the courts on a case by case basis. *Wallace v. Stewart*, 559 S.W.2d 647, 648 (Tenn. 1977); *Armstrong v. Neel*, 725 S.W.2d 953, 955 (Tenn. App. 1986). In *Armstrong v. Neel* this Court adopted the following standard regulating the determination of misconduct:

> conduct evincing such wilful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertences or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute. *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636, 640 (1941).

*Armstrong*, 725 S.W.2d at 956. The Tennessee Supreme Court has held that the burden of proving disqualification for benefits is on the employer and that "in order to establish a disqualification there must be shown a material breach of some duty which the employee owes to the employer." *Cherry v. Suburban Mfg. Co.*, 745 S.W.2d 273, 275 (Tenn. 1988). If no duty owed to the employer is violated, the actions of the employee, even if sufficient to warrant termination, do not amount to misconduct connected with such claimant's work within the

meaning of the statute. *Id*.; *Weaver v. Wallace*, 565 S.W.2d 867, 870 (Tenn. 1978).

At the Appeals Tribunal hearing, Mr. D'Amico was questioned by the Appeals Referee about why he was suspended:

> Q: Okay. So - so, Mr. Azbill asked you to fill out the application?
> A: Yes, sir.
> Q: What was your response when he asked you to fill out the application?
> A: I said no.
> Q: And for what reason?
> A: I didn't give him any reason. I said no.
>
> *         *         *
>
> A: . . . I don't know whether Danny [Azbill] remembers it but it's coming of Danny and he says, "Do I understand that you're refusing a direct order from management?" I said, yes. And that's the God's honest truth. And then he says, "Well, I'm suspending you." That's the way I seem to remember that it went. And I said, well, you might as well give me - whatever juncture I put this in, you - you might as well give me my termination papers now. . . . He then said, "Well, you're suspended pending a decision of management." I walked through the double doors, I made a right hand turn, I went to my locker to get some stuff out of my locker. Okay? Because I knew the way it was going to turn out. I was pre-disposed already, if you know what I'm saying, Mr. Rogers, and that's basically what came down.

After careful review of the record, we hold that there is substantial and material evidence to support the finding that Mr. D'Amico was terminated for work related misconduct in that he refused a reasonable request of management to fill out a form required of all employees and that he failed to report back to work after the one day suspension. It is obvious that there are ill feelings between Mr. D'Amico and members of JCI management, but there is no evidence that JCI was making an exceptional request in order to harass Mr. D'Amico. If Mr. D'Amico had returned to work the next day, his assertion that the refusal to fill out the application (standing alone) was a good faith error in judgment may have been plausible. However, the evidence shows that Mr. D'Amico deliberately disregarded a reasonable request of management and then failed to return to work at all. We hold that the decision of the Board of Review, adopting the findings of fact and conclusions of law of the Appeals tribunal was not arbitrary or capricious, but is supported by substantial and material evidence.

The judgment of the chancery court affirming the Board of Review's decision is affirmed. Costs are assessed against the appellant.

                                                _____

                                                **W. FRANK CRAWFORD,**
                                                **PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**DAVID R. FARMER, JUDGE**