IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

**FILED**

Feb 25, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| RALPH E. WILLIAMS, | ) E1999-01528-COA-R3-CV |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) APPEAL AS OF RIGHT FROM THE |
| | ) HAMILTON COUNTY CHANCERY COURT |
| | ) |
| TENNESSEE DEPARTMENT OF | ) |
| EMPLOYMENT SECURITY, | ) |
| COMMISSIONER MARGARET | ) |
| CULPEPPER, AND CHATTANOOGA | ) |
| AREA REGIONAL TRANSPORTATION | ) |
| AUTHORITY ("CARTA"), | ) |
| | ) HONORABLE W. FRANK BROWN, III, |
| Defendants-Appellees.) | CHANCELLOR |


For Appellant

RALPH E. WILLIAMS
Pro Se
Chattanooga, Tennessee

For Appellees

PAUL G. SUMMERS
Attorney General and Reporter
Nashville, Tennessee

DOUGLAS EARL DIMOND
Assistant Attorney General
Civil Rights Division
Nashville, Tennessee


O P I N I O N


AFFIRMED AND REMANDED                                        Susano, J.

This is an unemployment compensation case.  The Tennessee Department of Employment Security ("the Department") denied the claim of Ralph E. Williams for unemployment benefits, finding that Williams had been guilty of work-related misconduct.[1]  After exhausting his administrative remedies to no avail, Williams filed a petition for certiorari in the trial court, which court affirmed the Department's denial of benefits. Williams appeals, essentially arguing: (1) that he was not guilty of work-related misconduct; and (2) that he was deprived of a fair hearing in violation of state and federal law.

I.

Williams was employed as a bus driver for the Chattanooga Area Regional Transit Authority ("CARTA") from September 9, 1986, until his termination on February 26, 1996. The separation notice states that he was terminated because of "job misconduct; habitual violation of CARTA['s] work rules."  On February 29, 1996, Williams filed a claim for unemployment benefits.  His claim was subsequently denied because the Department found that Williams was discharged for work-related misconduct.

Williams appealed to the Department's Appeals Tribunal on March 29, 1996.  In his notice of appeal, Williams contends

---

[1]See T.C.A. § 50-7-303(a)(2) (1999), which provides, in pertinent part, as follows:

> (a) DISQUALIFYING EVENTS.  A claimant shall be disqualified for [unemployment] benefits:
> * * *
> (2) If the administrator finds that a claimant has been discharged from such claimant's most recent work for misconduct connected with such claimant's work....

2

that "CARTA has fired 11 black workers in the last 7 years using the misconduct rule, and this agency is not looking at all the facts in their decision."

The Appeals Tribunal heard Williams' appeal on April 23, 1996. At the hearing, CARTA presented several employees, who testified regarding Williams' disciplinary history and the reasons for his termination. Williams' disciplinary record, a volume of over 170 pages, was also introduced into evidence. Williams, who was representing himself, testified on his own behalf and presented one other witness.

On April 26, 1996, the Appeals Tribunal released its decision affirming the Department's denial of benefits. Although Williams had contended that his termination was in retaliation for the complaints he had filed against the company for racially-motivated discriminatory practices, the Appeals Tribunal found that Williams had "failed to present sufficient evidence to substantiate his case." The Appeals Tribunal also found as follows:

> The Appeals Tribunal finds that the evidence in the record is sufficient to establish intentional work related misconduct on the claimant's part within the meaning of TCA § 50-7-303(a)(2). The facts show that the claimant disregarded the employer's interests and/or willfully acted against the best interests of the employer. Misconduct is a deliberate act or a willful violation of an employee's duties, insubordination, intentional violation of company rules or conduct detrimental to the interests of the employer or his fellow workers. The claimant was discharged for continued and habitual violations of company policies and procedures. The claimant was aware that he was in jeopardy of losing his job. The claimant has progressed through the necessary disciplinary procedures to warrant

3

> termination. The Agency decision is
> affirmed.

The Department's Board of Review ("the Board") adopted and affirmed the Appeals Tribunal's decision on June 18, 1996. Williams then filed a petition for certiorari in the trial court on July 29, 1996. On February 17, 1999, the trial court affirmed the Board's decision.

## II.

T.C.A. § 50-7-304(i)(2) (1999) provides the standard by which courts must review administrative decisions involving claims for unemployment compensation:

> The chancellor may affirm the decision of the
> board or the chancellor may reverse, remand
> or modify the decision if the rights of the
> petitioner have been prejudiced because the
> administrative findings, inferences,
> conclusions or decisions are:
>
> (A) In violation of constitutional or
> statutory provisions;
> (B) In excess of the statutory authority of
> the agency;
> (C) Made upon unlawful procedure;
> (D) Arbitrary or capricious or characterized
> by abuse of discretion or clearly unwarranted
> exercise of discretion; or
> (E) Unsupported by evidence which is both
> substantial and material in the light of the
> entire record.

Williams' arguments appear to implicate two provisions of the statute: that the Board's decision is unsupported by substantial and material evidence, *see* T.C.A. § 50-7-304(i)(2)(E); and that the decision was in violation of constitutional or statutory provisions, *see* T.C.A. § 50-7-304(i)(2)(A). We will address each of his contentions in turn.

4

III.

First, we must determine whether the Board's decision is supported by substantial and material evidence. *See* T.C.A. § 50-7-304(i)(2)(E). When determining the sufficiency of the evidence, a court must "take into account whatever in the record fairly detracts from its weight, but [it] shall not substitute [its] judgment for that of the board of review as to the weight of the evidence on questions of fact." T.C.A. § 50-7-304(i)(3).

Williams challenges the Board's finding of work-related misconduct on two grounds. First, he argues that he "was not fired for job related misconduct at all but rather for having exposed company mismanagement, fraud, racial discrimination and sexual harassment." Second, he contends that CARTA did not substantiate its charge of misconduct against him.

We find that there is substantial and material evidence to support the Board's finding that Williams habitually violated CARTA's work rules. Art Barnes, CARTA's assistant executive director, testified that from March, 1993, to the date of Williams' termination, Williams had run late on his bus schedule nine times. The following is a portion of Williams' disciplinary history:

| Date | Incident/Violation | Action Taken |
|------|--------------------|--------------| 
| 03/10/93 | Running late | Counseled |
| 07/23/93 | Running late/failure to respond to radio | 2-day suspension |
| 08/05/93 | Running late | 3-day suspension |
| 09/19/94 | Violation of attendance policy (5 absences within 90 day period) | Written warning |

5

| 06/27/95 | Running late/improper use of radio | 1-day suspension |
|---|---|---|
| 08/08/95 | Failed to report intention to be off work for extended period | Warning |
| 08/10/95 | Failed to leave garage on time to commence route | 3-day suspension |
| 09/13/95 | Customer complaint -- constantly late on route | Investigation |
| 09/13 and 09/14/95 | Running late (confirmed by road supervisors) | 5-day suspension |
| 11/01/95 | Running late | 10-day suspension/ Final warning |
| 11/16/95 | Violation of attendance policy | Warning |
| 02/27/96 | Running late/failure to answer radio | Suspension/ Termination |

In November, 1995, when Williams was given a 10-day suspension for running late, he was advised as follows:

> Continued violation of Code of Conduct 1J, a Level I offense, RUNNING LATE SCHEDULE FOR NO VALID REASON. The ten (10) day suspension you have just completed is a severe warning to you.
>
> Any further violations of this rule within one year from the date of the last infraction or any major rule violation, will result in your termination from employment with CARTA.

Within the one-year period, on February 26, 1996, Lee Dawson, who was Williams' immediate supervisor, observed Williams still on CARTA's property eight minutes after Williams' run had been scheduled to begin. Dawson testified that he attempted to contact Williams by radio, but received no response. Dawson stopped Williams on his route and asked why he had started late. Williams' response was that he was not the only driver running late. When Dawson asked Williams why he had not responded to the

radio, Williams stated that he had not heard it.  Dawson then checked the radio and found that it was working properly. Williams was terminated the next day.  Based upon Williams' extensive history of running late and other violations of CARTA's rules, we find that there is substantial and material evidence to support the finding that Williams had habitually violated CARTA's work rules.

Next, we must determine whether Williams' habitual violation of the rules was "misconduct" for the purposes of disqualification under T.C.A. § 50-7-303(a)(2).  Although the term is not defined in the statute, we have defined "misconduct" as

> conduct evincing such wilful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer.  On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertences or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

*Armstrong v. Neel,* 725 S.W.2d 953, 956 (Tenn.Ct.App. 1986) (quoting *Boynton Cab Co. v. Neubeck,* 296 N.W. 636, 640 (Wis. 1941)).  Upon reviewing Williams' extensive disciplinary history, we find that there is substantial and material evidence to support a finding that Williams had shown an "intentional and substantial disregard" of his duties and obligations to CARTA by

7

his repeated violations of the agency's rules. His misdeeds fall within the concept of "misconduct" found in T.C.A. § 50-7-303(a)(2).

IV.

The second issue raised on appeal is whether Williams was deprived of a fair hearing in violation of constitutional or statutory provisions. *See* T.C.A. § 50-7-304(i)(2)(A). The Tennessee Employment Security Law and the federal Social Security Act both guarantee a claimant who has been denied unemployment benefits the right to a fair hearing. T.C.A. § 50-7-304(c)(1) (1999); 42 U.S.C. § 503(a)(3) (Supp. 1999). Williams contends that he was deprived of a fair hearing for several reasons. First, he argues that the referee presiding over the Appeals Tribunal hearing erroneously excluded evidence that, Williams contends, establishes that his termination was retaliatory. Second, he argues that he was deprived of his right to counsel. Third, he argues that T.C.A. § 50-7-303(a)(2) "automatically classifies" certain behavior as "misconduct" and that this classification deprived him of a fair hearing. We will address these issues in the order stated.

At the hearing, Williams attempted to introduce into evidence a written summary that he had prepared detailing the alleged harassment by CARTA; a newspaper clipping about the burning of Williams' house; and a letter written by Williams to the Department of Justice requesting a federal investigation of CARTA. Williams argues that the exclusion of these documents "prevented [him] from presenting his case at all."

8

We do not find that the exclusion of the proffered documents deprived Williams of a fair hearing. Although the referee did not allow the introduction of the written summary, he ruled that Williams could use the summary while testifying in order to refresh his memory. Despite this ruling inviting his oral testimony regarding the material in the summary, Williams failed to testify about these matters. Under the record before us, it cannot be said that he was prevented from presenting the substance of the material that he had incorporated into the summary.

The newspaper clipping and accompanying letter were excluded because the referee found them to be irrelevant. The clipping reports that Williams' house had burned down and that the cause of the fire was under investigation. The letter sets forth Williams' allegations that CARTA was responsible for the fire as well as other retaliatory and discriminatory acts against him. We find that these documents are at best unsubstantiated allegations; they provide no proof that CARTA engaged in any retaliatory conduct against Williams, only his contentions regarding such activity. Thus, these documents were properly excluded by the referee.

Next, Williams argues that he "was forced to go before the [B]oard...without being apprised of or allowed legal counsel at government expense."

The right to a fair hearing includes the right to be represented by counsel. *Simmons v. Traughber,* 791 S.W.2d 21, 24 (Tenn. 1990). In order to ensure that this right is effective, the Supreme Court has held that a claimant must have "full and

9

meaningful" notice of the right to be represented at the Appeals Tribunal hearing. *See* **id.**

The Department argues that Williams was advised of his right to be represented by counsel in a document enclosed in a notice mailed to Williams on April 9, 1996, advising him of the hearing before the Appeals Tribunal. The document states, in pertinent part, as follows:

_____

REPRESENTATION

> YOU MAY BE REPRESENTED BY AN ATTORNEY OR ANY
> OTHER AUTHORIZED REPRESENTATIVE OF YOUR
> CHOOSING. IF YOU CANNOT AFFORD AN ATTORNEY,
> FREE OR LOW COST ASSISTANCE MAY BE AVAILABLE
> THROUGH YOUR LOCAL LEGAL SERVICES
> ORGANIZATION OR BAR ASSOCIATION.

There is no indication that Williams did not receive this notice. We find that this advisement was sufficient to notify Williams of his right to be represented. *See* **id.** at 25.

Williams' contention that he was denied counsel "at government expense" does not rise to the level of error. The Department was not obligated to provide Williams with an attorney at the Department's expense; it was only required to advise him of his right to be represented. *See* **id.**

Finally, Williams argues that T.C.A. § 5-7-303(a)(2) is unconstitutional because it "automatically upholds the employer" and "automatically classifies misconduct," thereby depriving him of a fair hearing. As a result, he complains that he faced a "stacked deck" and a "biased set of examiners" at the hearing.

We have reviewed the entire record and have found no evidence of bias or prejudice on the part of the Department. Further, we find Williams' contentions regarding the statute to be baseless.  The statute does not specifically define "misconduct"; rather, it has been left to the courts to determine what constitutes misconduct on a case-by-case basis.  *See* **Armstrong,** 725 S.W.2d at 955.  Thus, there is no "automatic classification" of behavior in the statute.  Moreover, we find nothing in the statute which can be said to "automatically uphold[] the employer"; on the contrary, under T.C.A. § 50-7-303, the employer has the burden of proof as to the issue of "misconduct."  *See* **Weaver v. Wallace,** 565 S.W.2d 867, 870 (Tenn. 1978).  Williams' contentions are without merit.

V.


The judgment of the trial court is affirmed.  Costs on appeal are taxed to the appellant.  This case is remanded to the trial court for collection of costs assessed below, pursuant to applicable law.


_____
Charles D. Susano, Jr., J.



CONCUR:


_____
Houston M. Goddard, P.J.


_____
D. Michael Swiney, J.