# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### May 23, 2018 Session

## HAMPTON CRANE SERVICE, INC. v. BURNS PHILLIPS, COMMISSIONER OF TENNESSEE DEPARTMENT OF LABOR & WORKFORCE DEVELOPMENT, ET AL.

**Appeal from the Chancery Court for Sumner County**
**No. 2017-CV-55      Louis W. Oliver, Chancellor**

_____

## No. M2017-02213-COA-R3-CV

_____

Employer appeals from the agency's decision to award unemployment benefits to an employee. Because the record contains substantial and material evidence to support the agency's decision, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

Daniel C. Todd, Nashville, Tennessee, for the appellant, Hampton Crane Service, Inc.

Herbert H. Slatery, III, Attorney General and Reporter; W. Derek Green, Assistant Attorney General, for the appellee, Burns Phillips, Commissioner of Tennessee Department of Labor & Workforce Development, and Charles M. Jones

## MEMORANDUM OPINION[1]

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

**Background**

This case involves the award of unemployment benefits to Respondent/Appellee Charles M. Jones ("Mr. Jones" or "Claimant") after the termination of his employment by Petitioner/Appellant Hampton Crane Service, Inc. ("Hampton Crane" or "Employer"). Because Mr. Jones was the only witness to testify at any evidentiary hearing in this case, the facts are largely undisputed.

Mr. Jones was employed at Hampton Crane as a truck driver from December 2010 until his termination on July 27, 2016. In January 2013, Mr. Jones was in a work-related accident. He reported the accident to Hampton Crane and pursued a workers' compensation claim due to back and hip pain. Shortly thereafter, Mr. Jones began experiencing problems with his eyesight. He then went to a private medical doctor who suggested that the eye problems may have resulted from the January 2013 work-related accident. Mr. Jones immediately notified Hampton Crane of his vision issues, informing Hampton Crane's secretary-treasurer that he was experiencing double vision. According to later testimony from Mr. Jones, he often discussed his vision issues with Hampton Crane beginning in 2013.

In April 2013, Hampton Crane, through its workers' compensation insurance provider, requested that Mr. Jones see an independent physician for an examination of his vision. Of the panel provided, Mr. Jones selected ophthalmologist Dr. Edwin Rice. Mr. Jones saw Dr. Rice on May 24, 2013 and later underwent an MRI in July 2013. In October 2013, Dr. Rice issued a final report diagnosing Mr. Jones with double vision and assigned him a permanent impairment rating of two percent; Dr. Rice advised that the diagnosis would not keep Mr. Jones from doing his job at Hampton Crane, as Mr. Jones was "coping" with the issues he was experiencing.

In the meantime, on May 9, 2013, Mr. Jones attended his biannual medical examination required by the Department of Transportation ("DOT") to recertify his commercial driver's license. Mr. Jones testified that he reported that he had "double vision problems" to the examiner; however, in the medical history section of the examination report, the portion asking if he had eye disorders in the past five years was checked "No." He also certified the report as true with his signature. Mr. Jones later testified that although he read the form and signed that the contents were true, he did not fill out the form; instead, Mr. Jones testified that a staff member of the examiner must have filled out the form. On April 29, 2015, Mr. Jones attended another DOT physical in which he again checked "No" for an eye disorder or impaired vision. He also certified the examination report was true by signature. Mr. Jones later testified that he did fill out and sign this form, which he completed to match the form from his 2013 physical.

In November 2015, Mr. Jones attended an independent medical evaluation with Dr. Michael R. Politzer as a part of his workers' compensation claim. Mr. Jones

disclosed to Dr. Politzer that he had been suffering from double vision since the January 2013 accident. Mr. Jones also informed Dr. Politzer that he was also having issues with depth perception. As a result of the examination, Dr. Politzer assigned Mr. Jones an impairment rating of twenty percent and advised that Mr. Jones avoid all activities relating to driving for work or pleasure. On November 30, 2015, counsel for Mr. Jones forwarded Dr. Politzer's report to Hampton Crane's workers' compensation insurance provider. No one mentioned the report to Mr. Jones until mid-July 2016, when Hampton Crane prohibited Mr. Jones from driving company vehicles.[2] Mr. Jones was thereafter confined to work in the shop, such as sweeping the floors and washing the trucks. Two weeks later, Mr. Jones rejected Hampton Crane's settlement offer for his workers' compensation claim. The next day, July 27, 2016, Hampton Crane notified Mr. Jones that he was terminated due to giving false information to the medical examiners.

On July 31, 2016, Mr. Jones filed a claim for unemployment benefits with the Tennessee Department of Labor and Workforce Development ("the Department"). On November 14, 2016, the Department issued its Agency Decision that Mr. Jones was ineligible to receive unemployment benefits because he was terminated due to misconduct. Mr. Jones appealed this decision to the Appeals Tribunal, which held hearings on December 20, 2016, and January 13, 2017. Mr. Jones was the sole witness. The Appeals Tribunal reversed the Agency Decision finding that Mr. Jones was not discharged due to misconduct and thus eligible for unemployment benefits. Hampton Crane then appealed this decision to the Commissioner's Designee, and the Commissioner's Designee affirmed the Appeals Tribunal's decision. Hampton Crane then filed a petition for judicial review in the chancery court on May 5, 2017. The chancery court heard Hampton Crane's petition on August 29, 2017, and affirmed the Commissioner's Designee's decision. Hampton Crane appeals the chancery court's decision.

## Standard of Review

The same standard of review applies to this Court as applied in the trial court. *See* **Armstrong v. Neel**, 725 S.W.2d 953, 956 n.1 (Tenn. Ct. App. 1986) ("The appellate courts use the same review standards employed by the trial courts."). As such, our review is as follows:

> The chancellor or [the Court of Appeals] may affirm the decision of the commissioner or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

---

[2] Dr. Politzer's deposition was taken in connection with the workers' compensation claim in March 2016.

(A) In violation of constitutional or statutory provisions;
(B) In excess of the statutory authority of the agency;
(C) Made upon unlawful procedure;
(D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(E) Unsupported by evidence that is both substantial and material in the light of the entire record.

(3) In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that of the commissioner's designee as to the weight of the evidence on questions of fact. No decision of the commissioner's designee shall be reversed, remanded or modified by the chancellor, unless for errors that affect the merits of the final decision of the commissioner's designee. The petition for judicial review shall be heard by the chancellor either at term time or vacation as a matter of right, any other statute of this state to the contrary notwithstanding.

Tenn. Code Ann. § 50-7-304(i)(2). The standard applicable in this case is therefore "more narrow than the broad standard employed in other civil appeals." *Ruff v. Neeley*, No. W2006-01192-COA-R3-CV, 2006 WL 3734641, at *6 (Tenn. Ct. App. Dec. 20, 2006) (citing *Wayne County v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App. 1988)).

"A decision of an administrative agency is arbitrary or capricious when there is no substantial and material evidence supporting the decision." *StarLink Logistics Inc. v. ACC, LLC*, 494 S.W.3d 659, 669 (Tenn. 2016) (citing *Pittman v. City of Memphis*, 360 S.W.3d 382, 389 (Tenn.Ct.App.2011)) (involving a different statute that also applies the substantial and material evidence standard). This burden is not "onerous." *Roberts v. Traughber*, 844 S.W.2d 192, 196 (Tenn. Ct. App. 1991) ("[T]he burden of producing substantial and material evidence is not an onerous one.")). "[S]ubstantial and material evidence consists of relevant evidence which a reasonable mind might accept to support a rational conclusion and which furnishes a reasonably sound basis for the action being reviewed." *Armstrong*, 725 S.W.2d at 955 n.2. "[I]t is less than a preponderance of the evidence, . . . and more than a 'scintilla or glimmer' of evidence[.]" *StarLink Logistics*, 494 S.W.3d at 669. (internal citation omitted) (quoting *Wayne Cnty.*, 756 S.W.2d at 280).

Tennessee's unemployment statutes are "construed liberally in the employee's favor," while the disqualification provisions are construed narrowly. *Armstrong*, 725 S.W.2d at 955 (citing *Weaver v. Wallace*, 565 S.W.2d 867, 869–70 (Tenn. 1978)). "The employer has the burden of proving that an employee should be disqualified from receiving unemployment compensation benefits." *Id.* (citing *Weaver*, 565 S.W.2d at 869).

**Discussion**

Here, Hampton Crane asserts that the decision to award Mr. Jones unemployment benefits was arbitrary, capricious, and unsupported by substantial and material evidence. Rather, Hampton Crane contends that it met its burden to show that Mr. Jones committed "misconduct" such that he is disqualified from receiving unemployment benefits. We agree that an employee/claimant whose employment is terminated due to "misconduct connected with the claimant's work" is not entitled to unemployment benefits. See Tenn. Code Ann. § 50-7-303(a)(2)(A) (providing that a claimant is not entitled to unemployment benefits if the claimant was discharged from his or her most recent employment for misconduct). Misconduct sufficient to disqualify an employee from unemployment benefits is defined by Tennessee Code Annotated section 50-7-303(b)(3):

(A) "Misconduct" includes, but is not limited to, the following conduct by a claimant:

(i) Conscious disregard of the rights or interests of the employer;
(ii) Deliberate violations or disregard of reasonable standards of behavior that the employer expects of an employee;
(iii) Carelessness or negligence of such a degree or recurrence to show an intentional or substantial disregard of the employer's interest or to manifest equal culpability, wrongful intent or shows an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employee's employer;
(iv) Deliberate disregard of a written attendance policy and the discharge is in compliance with such policy;
(v) A knowing violation of a regulation of this state by an employee of an employer licensed by this state, which violation would cause the employer to be sanctioned or have the employer's license revoked or suspended by this state; or
(vi) A violation of an employer's rule, unless the claimant can demonstrate that:
(*a*) The claimant did not know, and could not reasonably know, of the rule's requirements; or
(*b*) The rule is unlawful or not reasonably related to the job environment and performance;

(B) "Misconduct" also includes any conduct by a claimant involving dishonesty arising out of the claimant's employment that constitutes an essential element of a crime for which the claimant was convicted;
(C) "Misconduct" also includes any conduct constituting a criminal offense for which the claimant has been convicted or charged that:

(i) Involves dishonesty arising out of the claimant's employment; or
(ii) Was committed while the claimant was acting within the scope of employment; and

(D) "Misconduct" does not include:

(1) Inefficiency, or failure to perform well as the result of inability or incapacity;
(2) Inadvertence or ordinary negligence in isolated instances; or
(3) Good faith errors in judgment or discretion . . . .

In determining that Mr. Jones's employment was not terminated for misconduct, the Commissioner's Designee made the following conclusions:

The issue involved in this case is whether or not the Claimant's discharge was for work connected misconduct under T.C.A. 50-7-303 (a)(2). The evidence is clear that the Claimant was injured in a work related accident. He reported the accident to the Employer and any effects he was feeling as a result of the accident to the Employer as soon as he became aware of those effects.

There seems to have been a slight delay about reporting the vision problems to the Employer between the date of the accident in January of 2013 and the Claimant reporting the vision problems in April of 2013, but the evidence is sufficient to explain that delay. The on-set of the vision problems the Claimant did not initially understand might be related to the accident until he was advised of such by an eye doctor and upon being told by a medical professional that his vision problems might be related to the accident, he immediately reported that to the Employer.

It is very obvious that there is a workman's compensation claim on-going as a result of the accident and that the parties are, at least at the time of the Appeals Tribunal hearing, far apart in their positions. The problems faced by the Appeals Tribunal and also by the Commissioner's Designee is to try to separate as best as can be done, the issue of the workman's compensation case from the case at hand here which is whether or not the Claimant's actions in some way amounted to work connected misconduct under T.C.A. 50-7-303 (a)(2) such as to deny this claim for benefits.

The Employer has argued that the Claimant falsified information to an independent DOT medical examiner resulting in him obtain[ing] a DOT health certificate. The Claimant had denied falsifying such information and

there is some indication that even absent from what the Claimant may or may not have told the DOT medical examiner, that the decision to issue the health certificate in this case was based on a physical examination of his vision.

At the basis for this dispute is the dispute between the Employer's medical examiner who found minimal visual impairment and did not find that the Claimant was unable to drive and the Claimant's medical examiner who found more substantial visual impairment and a recommendation that the Claimant not drive at all. In reaching the decision to approve this claim, the Appeals Tribunal did find that the medical provider who examined the Claimant at the attorney's request did not do so until sometime after the two (2) DOT physicals mentioned had already been taken. At the time he took those physicals, the Claimant was being treated by the eye doctor to whom he had been sent by the Employer. That doctor did not find him unable to drive and based on that decision and his own personal opinions, the Claimant felt he was able to drive. The Commissioner's Designee agrees with the Appeals Tribunal that the evidence is not sufficient to show that the Claimant committed an act that amounted to work connected misconduct under T.C.A. 50-7-303 (a)(2).

Based on a review of the entire record, including recordings of any prior hearings and documented records in this case, the Commissioner's Designee hereby finds that the Appeals Tribunal correctly found the facts and applied the law. The Commissioner's Designee hereby adopts their findings of fact and application of the law. The decision of the Appeals Tribunal approving this claim is affirmed.

Hampton Crane contends that the Commissioner's Designee's conclusions were without material evidence because Mr. Jones admitted that he falsified his medical history at the time of his two DOT medical examinations. According to Hampton Crane, Mr. Jones's actions therefore violated 49 U.S.C. § 521 (b)(2)(B), which provides a civil penalty for violating record-keeping requirements in the commercial motor vehicle safety context. *See* 49 U.S.C. § 521 (b)(2)(B)(ii) (providing a penalty for those that knowingly falsify a required report or record).

In contrast, the Department argues that the decision of the Commissioner's Designee should be upheld because the largely undisputed evidence shows that Mr. Jones informed both his medical examiners and his employers of his vision issues as early as his May 2013 physical. We agree. Here, the undisputed evidence shows that although Mr. Jones did sign forms related to his 2013 and 2015 DOT medical examinations that contained inaccurate information, the inaccuracies were, at most, the result of mere

negligence. *See* Tenn. Code Ann. § 50-7-303(b)(3)(d)(stating that misconduct does not include "ordinary negligence in isolated instances").

According to the undisputed evidence, Mr. Jones informed a health professional during his May 9, 2013 DOT physical of his vision problems. During this examination, Mr. Jones underwent a vision test, which he undisputedly passed. Thus, Hampton Crane's assertion that "Mr. Jones's failure to disclose his eye problems prevented the medical examiner from assessing Mr. Jones's medical fitness" is simply unsupported by the evidence in the record. Instead, the medical examiner was informed of Mr. Jones's vision problems, performed an eye exam on Mr. Jones, and ultimately recertified Mr. Jones's commercial driver's license.

Moreover, the form at issue was not completed by Mr. Jones, but by a third party associated with the DOT medical examination. Mr. Jones thereafter signed the form, which stated that he had no vision issues. Mr. Jones did complete the form related to his 2015 physical. By the time of his April 2015 physical, however, Mr. Jones had been cleared to drive by Dr. Rice, who had assigned Mr. Jones only a two percent impairment rating with no restrictions on his ability to drive. Additionally, Mr. Jones testified that he completed the form to conform to the 2013 form. At the time of the completion of this form, it appears that Mr. Jones was under the reasonable belief that he had no vision issues sufficient to disqualify him from driving a commercial vehicle. During this examination, Mr. Jones again underwent and passed a vision test. At the time that Mr. Jones signed both forms, no medical professional had ever informed Mr. Jones that he had vision problems sufficient to prevent his employment as a commercial truck driver.

Additionally, the evidence is undisputed that Mr. Jones informed his employer of his vision issues in 2013, well before the termination of his employment. In fact, Hampton Crane received Dr. Politzer's report indicating that Mr. Jones should not drive in November 2015, but waited over seven months before prohibiting Mr. Jones from operating company vehicles. Mr. Jones's employment was thereafter terminated approximately two weeks later. This report, along with the undisputed testimony that Mr. Jones informed Hampton Crane of his vision problems years earlier, show that Hampton Crane had knowledge of the inaccuracies reported on the DOT physical forms well before the termination. Rather than take action promptly following this knowledge, Hampton Crane chose to terminate Mr. Jones's employment the very next day following the rejection of a workers' compensation settlement offer. The temporal proximity between Hampton Crane's knowledge of the purported "falsification" of the medical forms and the termination of Mr. Jones's employment is therefore tenuous.

In sum, Mr. Jones signed forms associated with two DOT physicals containing admittedly inaccurate information. In connection with the signing of both forms, however, Mr. Jones informed the medical professionals of his vision problems, submitted to and passed vision tests administered during the DOT physicals, and had not been

informed by any medical professionals that his vision problems prevented him from operating a commercial vehicle. Indeed, at the time that Mr. Jones filled out and signed the April 2015 form, he had been medically cleared to drive commercial vehicles by a physician chosen by Hampton Crane. Moreover, throughout this time, Hampton Crane was informed of Mr. Jones's vision problems. As such, the inaccuracies in the two DOT physical forms appear to be isolated instances of negligence, rather than deliberate or knowing instances of misconduct. *See generally* Tenn. Code Ann. § 50-7-303(b)(3) (defining misconduct). Under these circumstances, we must conclude that the Commissioner's Designee's decision that the termination was not the result of misconduct is supported by material evidence and neither arbitrary nor capricious.

## Conclusion

The judgment of the Chancery Court of Sumner County is affirmed and this cause is remanded for all further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are assessed against Appellant Hampton Crane Service, Inc., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE