472 So.2d 800 (1985)
Sandra L. DAVIS, Appellant,
v.
FLORIDA UNEMPLOYMENT APPEALS COMMISSION and Winn Dixie Stores, Inc., Appellees.
No. 84-2394.
District Court of Appeal of Florida, Third District.
July 2, 1985.
*801 Victor E. Rocha, Miami, for appellant.
Geri Atkinson-Hazelton and Richard S. Cortese, Tallahassee, for appellee Commission.
Before HENDRY, HUBBART and FERGUSON, JJ.
PER CURIAM.
The claimant Sandra L. Davis appeals a final order of the Florida Unemployment Appeals Commission which affirmed an appeals referee's decision denying her unemployment compensation benefits. The sole basis for the denial of benefits was the referee's legal conclusion that, based on the facts as he found them, the claimant Davis had been discharged by her employer for misconduct connected with her work, thereby disentitling her to such benefits under Section 443.101(1)(a), Florida Statutes (1983). Accepting fully the findings of fact made by the appeals referee, we conclude that such facts do not, as a matter of law, constitute "misconduct" as defined by Section 443.036(24), Florida Statutes (1983), and consequently cannot disentitle her to unemployment compensation benefits under Section 443.101(1)(a), Florida Statutes (1983). We therefore reverse the Unemployment Appeals Commission's affirmance of the appeals referee's denial of unemployment compensation benefits herein and remand for further proceedings.
The facts of this case are stated in the decision of the appeals referee in this cause as follows:
"FINDINGS OF FACT: The claimant became employed by the instant employer, a chain of supermarkets, as a cashier on February 2, 1982. No incident occurred to affect the claimant's employment until her last day of work, April 11, 1984. At about 9:45 AM, the claimant was working the `speed lane' when she noticed that the terminal that was supposed to be operated by another cashier M., had seven or eight customers and the cashier was not there. She called this to the attention of the assistant manager, as the line was backing up and people who had more than the ten items allowed were getting into the fast service lane. When M. returned, she was angry and pointed her finger at the claimant's face, close to it, and told the claimant to mind her own business. This conversation was loud enough to be heard by the assistant manager, who was about four feet away. Unseen by the assistant manager, M. attempted to kick the claimant but the claimant avoided the blow by moving back and putting her hand on her leg. At that time she also called the claimant a `black woman.' The claimant is of the Black race. The claimant returned to her duties and, a few moments later, turned to see the other employee at the manager's office. The claimant said nothing to the M., but, while half turned in this manner was slapped in the face by M. The claimant asked her why she had done this, and the other cashier claimed that the claimant had scratched her lip. The claimant did not scratch her lip. At this, the claimant tried to go after the other cashier to hit her, but was restrained by the assistant manager, who kept them apart and called the police. As the assistant manager did this, the claimant told M. that if she slapped her again she was going to go to her car and get her gun. A fellow worker, I, who heard this, then got into the argument and said that if she was going to hurt M., then she might as well hurt her too. An argument continued between the three women. About ten or fifteen minutes *802 after the original incident took place, the claimant's sister showed up at her place of work. She asked the claimant what had happened and the claimant's sister and I. became embroiled in an argument. The claimant had to restrain her sister from attacking I., and several customer[s] also became involved in attempting to break up the altercation. The claimant did nothing to provoke her sister into attacking the other cashier. The claimant left work early that day with permission from the employer, and was informed shortly thereafter that she was discharged because of the fights between herself and the other employee."
Based on the above-recited facts as found by the appeals referee, it is plain that the co-employee "M" precipitated the entire incident herein by physically assaulting and verbally abusing the claimant Davis without just cause. The claimant Davis reacted to this physical and verbal harassment by lunging at "M" and issuing a conditional threat of violence. Although the claimant Davis may have shown bad judgment and over-reacted to the physical and verbal abuse by issuing the conditional threat of violence, the threat clearly was made in "hot blood" due to the physical and verbal abuse by the fellow employee "M." This bad judgment and inability to control herself in the face of repeated harassment may have justified her employment dismissal, but it cannot, in our view, justify a denial of unemployment compensation benefits to her. It is settled that an employee's exercise of bad judgment, causing an otherwise proper employment dismissal, does not, without more, constitute "misconduct" within the meaning of Section 443.036(24), Florida Statutes (1983), and therefore cannot preclude the payment of unemployment compensation benefits under Section 443.101(1)(a), Florida Statutes (1983). See Tucker v. Florida Department of Commerce, 366 So.2d 845, 847 (Fla. 1st DCA 1979); Williams v. State of Florida, Department of Commerce, 260 So.2d 233, 234 (Fla. 1st DCA), cert. denied, 264 So.2d 427 (Fla. 1972); Spaulding v. Florida Industrial Commission, 154 So.2d 334, 338-39 (Fla. 3d DCA 1963).
In this respect, we reject the referee's legal conclusion that there were two fights in this case and that the claimant caused the "second" fight by issuing the conditional threat of violence. The subject incident was clearly one continuous episode in which the claimant was in "hot blood" when she made the aforesaid threat. Although generally it is true that a claimant's threat of physical violence directed at a fellow employee leading to the claimant's discharge constitutes employment-related misconduct which disentitles the claimant to unemployment compensation benefits, a different result may obtain where, as here, the threat was entirely precipitated by a fellow employee's unjustified harassment of the claimant. Annot., 20 A.L.R.4th 637, 648-51 (1983).
We are further supported in the result we reach today by the award below of unemployment compensation benefits to the co-employee "M." We appreciate the fact that this award was made by another appeals referee based on another record, which award was never appealed. Still, we cannot help reflecting that the cases could have been consolidated for a single hearing before a single appeals referee so as to avoid such Alice-in-Wonderland results; beyond that, the Unemployment Appeals Commission itself could have initiated a review of the decision in "M"'s case, but declined to do so. § 443.151(4)(c), Fla. Stat. (1983). The Commission's failure to take these corrective measures has therefore led to the denial of unemployment benefits to the less blameworthy party in this incident and an award of such benefits to the more culpable party. We cannot allow such a patently inequitable result to stand where, as here, such inconsistent results were clearly avoidable had proper procedures been followed. See Amos v. Department of Health & Rehabilitative Services, District IV, 444 So.2d 43, 47 (Fla. 1st DCA 1983); North Miami General Hospital, Inc. v. Office of Community Medical Facilities, Department of Health & Rehabilitative *803 Services, 355 So.2d 1272, 1278 (Fla. 1st DCA 1978).
The order under review is reversed and the cause is remanded to the Unemployment Appeals Commission with directions to reverse the appeals referee's denial of unemployment compensation benefits to the claimant Sandra L. Davis.
Reversed and remanded.
HUBBART and FERGUSON, JJ., concur.
HENDRY, J., dissents.