642 So.2d 784 (1994)
Anthony J. GARGUILO, Sr., Appellant,
v.
FLORIDA UNEMPLOYMENT APPEALS COMMISSION, and Freedom Properties, Appellees.
No. 93-03669.
District Court of Appeal of Florida, Second District.
September 9, 1994.
Anthony J. Garguilo, Sr., pro se.
William T. Moore, Tallahassee, for appellee Unemployment Appeals Com'n.
QUINCE, Judge.
The appellant, Anthony J. Garguilo, Sr., seeks review of an Unemployment Appeals Commission order affirming the denial of his claim for unemployment benefits. We reverse.
Garguilo was employed in September 1989 as a security officer at a retirement health care center. On May 15, 1993, Garguilo mistakenly told the wife of another security guard that the other guard was there when he was not. After the other guard arrived at work, he contacted Garguilo by telephone and persisted in wanting to discuss the matter, asserting that Garguilo had given his wife a hard time. Upon Garguilo declining to discuss the matter by telephone, the other guard told Garguilo that he was coming to Garguilo's location, threatening to "whip [his] ass." Garguilo then called to the security desk requesting assistance. The senior security officer sent a probationary employee in response to Garguilo's request.
When that employee arrived, he observed Garguilo and the other security officer in close confrontation, arguing and exchanging strong language. The other security officer said that if Garguilo were not a "cripple," he would hit him. He then turned to walk away from Garguilo, who has a disability. Garguilo became enraged at the remark, and threw a small two-way radio[1] that belonged to the employer. The radio struck the other security guard in the arm, falling apart when it fell to the ground. Garguilo reassembled it and returned to the guard house. He was terminated for engaging in the verbal confrontation and for throwing the radio. The appeals referee concluded that Garguilo committed misconduct,[2] and was therefore ineligible for unemployment compensation benefits. The Unemployment Appeals Commission affirmed.
*785 We disagree. Under similar circumstances, other claimants have been awarded unemployment compensation benefits. In Davis v. Florida Unemployment Appeals Commission, 472 So.2d 800 (Fla. 3d DCA 1985), two supermarket cashiers were involved in an altercation. At one point, Davis lunged at her co-employee and threatened to get her gun. The incident was serious enough to require police intervention. Id. at 801. The appeals commission affirmed the appeals referee's decision denying unemployment benefits. The court reversed, finding it "plain that the co-employee ... precipitated the entire incident." Id. at 802. The court reasoned that while Davis may have shown bad judgment and over-reacted, her emotional response had been provoked. Id. Significantly, the court concluded:
This bad judgment and inability to control herself in the face of repeated harassment may have justified her employment dismissal, but it cannot, in our view, justify a denial of unemployment compensation benefits to her. It is settled that an employee's exercise of bad judgment, causing an otherwise proper employment dismissal, does not, without more, constitute "misconduct" within the meaning of Section 443.036(24), Florida Statutes (1983)[[3]], and therefore cannot preclude the payment of unemployment compensation benefits under Section 443.101(1)(a), Florida Statutes (1983).
Id. (citations omitted).
The court rejected the referee's legal conclusion that there were two fights and that Davis caused the second fight. Rather, the incident was "clearly one continuous episode." Id. The court also noted that the other employee was awarded unemployment benefits in a separate proceeding.
This court, in Anderson v. Florida Unemployment Appeals Commission, 517 So.2d 754 (Fla. 2d DCA 1987), reached a similar result on similar facts. In Anderson, an altercation ensued in which a co-worker hit Anderson in the ribs with a two by four and Anderson cut the co-worker slightly on the hand with a knife. The appeals referee concluded that while the co-worker was the initial aggressor, "there was no indication that [Anderson] could not have withdrawn" before the situation escalated. Id. at 755.
In reversing, this court stated that while Anderson's failure to withdraw rather than strike a retaliatory blow "may have shown poor judgment and an inability to control himself which justified his employment dismissal," it was not misconduct as defined by section 443.036(24). Id. at 756.
Finally, in General Asphalt Co., Inc. v. Harris, 563 So.2d 803 (Fla. 3d DCA 1990), the court affirmed the appeals commission's order awarding unemployment compensation benefits. Harris had complained to his employer about the conduct of other employees. Subsequent to these complaints, an employee began to tease Harris by throwing hot asphalt pebbles to him. Harris requested that he stop, and when he did not, Harris hit him with a shovel, cutting him on the hands. The court observed that while Harris had acted irresponsibly, his actions were not without provocation. Moreover, the employer had the opportunity to intercede before the situation escalated. Under such circumstances, the claimant's actions did not constitute misconduct. Id. at 804.
Many of the circumstances important to the results in the cases above exist here. As in Davis, Anderson, and General Asphalt, a co-worker was the aggressor. Garguilo had been employed for several years, and this was an isolated incident. When Garguilo called the security desk to request assistance, it gave the employer an opportunity to intervene before the situation escalated. Cf. General Asphalt, 563 So.2d at 804.
Further, as in Davis, we reject the referee's legal conclusion that Garguilo ever became the aggressor. The confrontation was clearly one continuous episode. Here the co-worker left his security post and went to the claimant's post threatening to "whip [the claimant's] ass." He then called Garguilo a "cripple." The co-worker was in his thirties, while Garguilo was in his sixties and had a physical disability. Under such circumstances, we have no difficulty in concluding *786 that the co-worker was the aggressor, and that Garguilo was responding to provocation. It is also clear that Garguilo acted in a purely emotional manner, having been described in the findings of fact as becoming "enraged." Finally, the co-worker was not subject to the harsh sanction of employment termination.
Accepting fully the referee's findings of fact, we nevertheless conclude that such facts do not, as a matter of law, constitute misconduct as defined by section 443.036(26). The facts demonstrate that Garguilo exhibited an emotional reaction to provocation from a co-employee, which has previously been held not to constitute misconduct. While there may be instances in which a reaction is so inappropriate to the provocation that the claimant should be denied benefits, this is not such a case. Accordingly, we reverse the order denying the appellant's claim for unemployment benefits and remand for proceedings consistent with this opinion.
Reversed and remanded.
DANAHY, A.C.J., and ALTENBERND, J., concur.
NOTES
[1] The radio was "a little longer than a pen."
[2] Section 443.036(26), Florida Statutes (1993), provides as follows:

(26) MISCONDUCT.  "Misconduct" includes, but is not limited to, the following, which shall not be construed in pari materia with each other:
(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.
[3] Now renumbered at § 443.036(26), Florida Statutes (1993).