927 So.2d 153 (2006)
Michael R. BAGENSTOS, Appellant,
v.
FLORIDA UNEMPLOYMENT APPEALS COMMISSION, Al Packer Ford, and Al Packer, Inc., Appellees.
No. 4D05-1713.
District Court of Appeal of Florida, Fourth District.
April 26, 2006.
*154 Isidro M. Garcia of the Garcia Law Firm, West Palm Beach, for appellant.
Charles Robinson Fawsett, P.A. of Shutts & Bowen LLP, Orlando, for Appellee-Al Packer, Inc.
TAYLOR, J.
The claimant, Michael Bagenstos, appeals a final order of the Unemployment Appeals Commission upholding the denial of his unemployment compensation benefits. Denial was based on the claimant's discharge for misconduct connected with work. Bagenstos's employer, Al Packer Ford, discharged him because of an incident involving a customer complaint. As the record shows, Bagenstos handled the situation poorly when he engaged in a confrontation with the customer. We reverse, *155 however, because under our unemployment compensation laws, this single isolated incident by a longtime employee does not constitute misconduct so as to disqualify him from receiving unemployment benefits.
Bagenstos had worked at Al Packer Ford as an auto technician for almost nine years before the incident that led to his termination. He had never been cited for any disciplinary problems during his employment, and, in fact, had received awards of excellence. On September 28, 2004, at around noon, a customer came into the dealership to pick up his truck. The truck, which needed a minor repair, was not ready at noon as promised, because a replacement part had just arrived. The customer asked service advisor Chad Milner about the status of the repair. Milner, in turn, asked Bagenstos about the truck's status. Bagenstos, who was in an office behind Milner's desk, informed Milner that the truck would not be ready until 5:00 p.m.
Upset about the delay, the customer insisted that the repairs be done as soon as possible. As the customer was leaving the service area, Bagenstos told Milner that the vehicle had not been taken apart, so that if the customer needed to take it, he could; it was not a problem. Overhearing this, the customer stopped and asked Milner what Bagenstos had said. When Milner explained, the customer asked if Bagenstos was being a "smartass." Milner told him, "No, he's just letting you know that your vehicle's ready." The customer responded "well, he is being a smartass then I'm going to go talk to his supervisor." Milner testified that there was nothing in Bagenstos's demeanor or speech that could have been characterized as "smartass" behavior.
At that point, Bagenstos came out of the office and introduced himself. He told the customer that the owner was probably in the front office, and that if would like to speak to him, he would be happy to take him up front to talk with him. The customer responded that he "didn't need this," and that he needed his truck back because he was going on a twelve-hour shift with no sleep. He told Bagenstos, "I'll take you right up to your supervisor." Bagenstos then said, "If you want me to clock out, I'll take this out front with you." The customer told Bagenstos that he "would not stand for that" and immediately went up to the showroom to report the incident to the sales manager.
Several days later, Bagenstos had a disciplinary meeting with his service manager. About two-thirds of the way through the meeting, Bagenstos revealed that he was secretly taping the meeting. The manager permitted Bagenstos to tape the balance of the meeting. The following day Bagenstos was fired.[1]
In concluding that Bagenstos was discharged for misconduct connected with work, the appeals referee stated:
The evidence in this case shows that the claimant was discharged for misconduct connected with the work. The claimant had received a copy of the employer's concern resolution process, which directed employees to seek out a manager for any problems that might occur with a customer. The claimant had received a copy of this policy. On September 28, 2004, the claimant engaged in a confrontation with a customer. The claimant asked the customer to go outside to settle the situation. The claimant did not try to find a manager to help resolve the situation, nor did the claimant try to *156 get away from the situation. Instead, the claimant suggested that the claimant and the customer go outside to settle issue. The claimant made no attempt to bring the above situation to the attention of the employer. The claimant was following a course of action that evinces an intentional disregard of the employer's best interests. Consequently, it is concluded that the claimant was discharged for misconduct connected with the work.
Upon review, the Unemployment Appeals Commission found that the record adequately supports the referee's factual findings and that the referee reasonably applied the pertinent laws to those findings. Accordingly, the Commission affirmed the referee's decision disqualifying Bagenstos from receiving benefits.
A referee's factual findings cannot be disturbed if supported by competent substantial evidence. Jackson v. Unemployment Appeals Comm'n, 730 So.2d 719, 721 (Fla. 5th DCA 1999); Pownall v. Fla. Unemployment Appeals Comm'n, 729 So.2d 479, 480 (Fla. 4th DCA 1999). An appeals court cannot overturn the decision of the Unemployment Appeals Commission unless it determines that there is a lack of competent, substantial evidence in the record to support its action. Doyle v. Fla. Unemployment Appeals Comm'n, 635 So.2d 1028, 1030 (Fla. 2nd DCA 1994).
In this case, the referee's finding that the claimant knowingly violated the employer's written policy for resolving customer disputes by confronting a customer rather than involving a supervisor or manager is supported by competent substantial evidence. However, in concluding that the claimant's actions constituted misconduct warranting his ineligibility for unemployment benefits, the appeals referee and UAC failed to take into account certain circumstances that Florida courts have considered significant in analyzing whether the claimant's conduct met the statutory standard for misconduct.
The standard for misconduct is identified in section 443.036(29), Florida Statutes. See Durall v. Unemployment Appeals Comm'n, 743 So.2d 166, 168 (Fla. 4th DCA 1999). That section states that "misconduct" includes:
Conduct demonstrating willful or wanton disregard of an employer's interests and found to be a deliberate violation or disregard of the standards of behavior which the employer has a right to expect of his or her employee.
§ 443.036(29), Fla. Stat. (2005). In determining what constitutes misconduct under the standard, courts are to construe the statute narrowly in favor of the claimant. Durall, 743 So.2d at 168. Such a restrictive construction is required by the remedial and humanitarian nature of the unemployment compensation law. Doyle, 635 So.2d at 1031. Misconduct serious enough to warrant dismissal is not necessarily serious enough to warrant the forfeiture of unemployment benefits. Jackson, 730 So.2d at 721.
In cases where a claimant was terminated because of fighting or other aggressive acts, courts have deemed the denial of benefits based upon misconduct unwarranted where certain extenuating circumstances existed.[2] These circumstances include: (1) the long duration of *157 the claimant's employment; (2) the isolated nature of the incident; and (3) provocation.
In Lucas v. Unemployment Appeals Comm'n, 664 So.2d 1043 (Fla. 2nd DCA 1995), the Unemployment Appeals Commission found Lucas ineligible for unemployment compensation benefits because he was discharged for misconduct after striking a co-worker on a lunch break. The Second District Court of Appeal reversed, holding that a single episode of loss of self-control by a longtime worker, who was provoked, does not constitute misconduct so as to render him ineligible for unemployment benefits.
Similarly, in Jackson v. Unemployment Appeals Comm'n, 730 So.2d 719 (Fla. 5th DCA 1999), the fifth district reversed the Commission's denial of benefits to a claimant discharged for fighting with a co-worker during a lunch break card game. The court held that the claimant did not engage in misconduct requiring forfeiture of benefits, where the appeals referee found that the claimant's "response in striking the other employee after being provoked was `at worst ... an isolated act of poor judgment' that did not amount to misconduct." Jackson cited numerous cases, including Lucas, for the principle that provocation is an important consideration in determining whether the "fighting" employee's behavior constituted misconduct. 730 So.2d at 721. The court in Jackson also pointed out that "[m]isconduct usually consists of repeated instances in the face of warnings, and isolated acts of poor judgment do not amount to misconduct." Id. In reversing the denial of benefits, it noted that the claimant was a longtime, well-regarded employee with only a remote similar incident in his employment history.
Al Packer Ford tries to distinguish Jackson and Lucas on the basis that the provoking party in those cases was a co-worker rather than a customer. Without doubt, more deference is owed to a customer than a co-employee. However, this difference is not so great as to render Bagenstos's isolated, emotional overreaction to the customer's behavior wholly inexcusable. We strongly agree that an employer should not be expected to tolerate belligerent behavior towards a customer. But as we mentioned above, misconduct serious enough to justify dismissing an employee is not necessarily serious enough to warrant denying him unemployment benefits.
Here, the record contains ample evidence that this incident was a provoked, isolated act of poor judgment by a longtime employee. Yet, the referee makes no mention of these factors in his findings and conclusions concerning misconduct. Because these factors are apparent from the record, we conclude that the Commission erred in determining that Bagenstos's actions amounted to misconduct under our unemployment compensation law. Accordingly, we reverse the Commission's order and remand for an award of unemployment compensation benefits to Bagenstos.
Reversed and Remanded.
POLEN and SHAHOOD, JJ., concur.
NOTES
[1] The appeals referee notes in his factual findings that this taping occurred, but he does not include that factor as a basis for his ruling on misconduct.
[2] See Jackson, 730 So.2d at 722; Lucas v. Unemployment Appeals Comm'n, 664 So.2d 1043, 1044 (Fla. 2d DCA 1995); Gen. Asphalt Co. v. Harris, 563 So.2d 803 (Fla. 3d DCA 1990); Garguilo v. Fla. Unemployment Appeals Comm'n, 642 So.2d 784, 786 (Fla. 2d DCA 1994); Davis v. Fla. Unemployment Appeals Comm'n, 472 So.2d 800 (Fla. 3d DCA 1985).