IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 19, 2015

VIRGINIA H. SANDERS v. COMMISSIONER OF DEPARTMENT OF
LABOR AND WORKFORCE DEVELOPMENT, ET AL.

Appeal from the Chancery Court for Shelby County
No. CH1318403      Oscar C. Carr, III, Chancellor

_____

No. W2015-00796-COA-R3-CV – Filed September 8, 2015
_____

Appellant employee appeals from the denial of her claim for unemployment compensation.
Because there is substantial and material evidence in the record to establish that the employee
was discharged for work-related misconduct, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J. W.S., delivered the opinion of the Court, in which ARNOLD B.
GOLDIN, J., and BRANDON O. GIBSON, J., joined.

Virginia H. Sanders, Bartlett, Tennessee, Pro Se.

Herbert H. Slatery, III, Attorney General and Reporter; and Jason I. Coleman, Assistant
Attorney General, for the appellees, Commissioner, TN. Dept. of Labor & Workforce
Development.

R. Alex Boals, Memphis, Tennessee, for the appellee, Baptist Memorial Hospital, Inc.

OPINION

**Background**

Plaintiff/Appellant Virginia H. Sanders was employed by Defendant/Appellee Baptist
Memorial Hospital ("the hospital") as a unit coordinator beginning in October 24, 1994. On

Friday, June 14, 2013, an incident occurred that resulted in the termination of Ms. Sanders's employment.

On June 25, 2013, Ms. Sanders filed an initial claim for unemployment benefits. On August 5, 2013, the Department of Labor and Workforce Development ("Department of Labor") found that Ms. Sanders was discharged for workplace misconduct, disqualifying her from unemployment benefits. On August 14, 2013, Ms. Sanders filed an appeal to the Department of Labor's Appeals Tribunal.

The hearing officer for the Appeals Tribunal conducted a telephonic hearing on October 9, 2013. Neither Ms. Sanders nor the hospital was represented by counsel. Instead, Ms. Sanders appeared on her own behalf, and the hospital's Director of Human Resources, Dennis Fisher, appeared on its behalf. Lulu Lofton, the head nurse on the floor when the incident took place, testified first. The facts surrounding the incident were largely undisputed. According to the testimony and other documents in the record, Ms. Lofton asked Ms. Sanders to ensure that the patient care assistants ("assistants") had working pagers. To accomplish this, Ms. Sanders sent a message through the paging system for the assistants to "check your lights." Dale Neal, one of the assistants, then approached Ms. Sanders and Ms. Lofton to indicate that she did not understand the message. Ms. Sanders and Ms. Lofton attempted to explain the purpose of the page. Thereafter, Ms. Neal walked away from the nurses' station and made a gesture that Ms. Sanders interpreted as an invitation to kiss Ms. Neal's behind. Ms. Sanders replied that she did not have to "kiss [Ms. Neal's] big, fat behind." Ms. Neal then allegedly returned to the nurses' station. According to Ms. Sanders, Ms. Neal approached in a threatening manner with her fist clenched.[1] All witnesses for the hospital denied that Ms. Neal approached the nurses' station in a threatening manner. Ms. Sanders then rose from her chair, and she and Ms. Neal allegedly continued to argue. Because voices were raised,[2] Ms. Lofton informed Ms. Sanders and Ms. Neal that they could not have this discussion at the nurses' station, but needed to take the issue to a conference room or outside. Ms. Sanders responded that they should "take it outside." According to Ms. Sanders, she merely indicated her intention to continue the verbal disagreement away from the nurses' station. Witnesses for the hospital, however, described Ms. Sanders's demeanor as threatening. Neither party actually engaged in any physical altercation. Nevertheless, it appears that it was Ms. Sanders who ultimately called security to inform them of the confrontation.

According to Latonya Green, the nurse manager, after she was informed of the altercation,[3] both Ms. Sanders and Ms. Neal were sent home for the remainder of the day and

---

[1] According to Ms. Sanders's testimony, this was not the first time that Ms. Neal had threatened her.
[2] Ms. Sanders testified, however, that "it was not a loud argument."
[3] Ms. Green did not witness the altercation.

2

asked to provide written statements regarding what occurred. Ms. Neal provided a statement, but Ms. Sanders either refused to provide one or delayed in providing a statement.[4] Both employees were placed on investigative suspension, and Ms. Sanders was discharged on Monday, June 18, 2013. Ms. Green indicated that the decision to terminate Ms. Sanders's employment was because she "violated our code of conduct and safe and productive workplace policy by displaying disruptive behavior, due to advancement toward another employee and inviting the employee to take the confrontation outside, and being the aggressor in the situation." Ms. Lofton testified that Ms. Sanders was aware of the hospital's threatening behavior policy, as employees are required to review it annually and take an annual disruptive behavior class. According to Ms. Lofton, "according to [the hospital's] policy, [threatening] behavior is expressly forbidden conduct, which will not be tolerated, and can be a ground[] for termination."

The Appeals Tribunal issued a written decision reversing the decision of the Department of Labor. Specifically, the Appeals Tribunal found that:

> [Ms. Sanders] was discharged for threatening a co-worker with violence. The employer's policy allows for immediate discharge of employees who threaten violence. . . .
>
> . . . . Although [Ms. Sanders] was involved in a verbal altercation with the co-worker, insufficient evidence was presented to show that [Ms. Sanders] threatened the co-worker with violence. A willful or wanton violation of a duty [Ms. Sanders] owed to the employer has not been established. [Ms. Sanders] was discharged, but misconduct connected with work has not been shown . . . .

On October 21, 2013, the hospital requested an appeal of the decision by the Appeals Tribunal. The hospital argued that Ms. Sanders's actions constituted workplace misconduct because she failed "to observe rules of safety or conduct that an average person would observe." *See* Tenn. Code Ann. § 50-7-303(a)(2).

The Commissioner's Designee issued a written decision concerning the hospital's appeal on November 1, 2013. Therein, the Commissioner's Designee's decision specifically discussed the events that occurred after Ms. Neal first began to walk away from the nurses' station, prior to the altercation:

---

[4] Ms. Sanders denied that she failed to provide a written statement or otherwise delayed providing the written statement. According to Ms. Sanders, she attempted to provide the report when she returned to work on Monday morning.

Apparently the situation was calm at the time and the other employee turned around and sta[r]ted to walk away. As the employee was walking way, [Ms. Sanders] noticed a movement that the employee seemed to pat her bottom as she walked away. While the other employee did not make any verbal comments, [Ms. Sanders] interpreted the motion as the other employee telling [Ms. Sanders] to kiss her behind. As that point [Ms. Sanders] called out to the employee something to the effect of I don't have to or do you want me to kiss your big fat behind. After [Ms. Sanders] made that comment, the other employee turned around and started walking back towards [Ms. Sanders] who got out of her chair and they started to have a loud argument during which [Ms. Sanders] told the other employee let's take it outside. The incident happened at the nursing station.

Based upon these facts, the Commissioner's Designee concluded:

The evidence is sufficient to show that during a confrontation with another employee, [Ms. Sanders] made a comment to that employee to let's take it outside. The difference or disagreement between the parties was to [Ms. Sanders]'s intention. The Employer has argued that such a statement is an implied invitation to take the argument outside to engage in a physical fight to settle the matter and, as such, constitutes a physical threat or invitation to physical violence.

[Ms. Sanders] argued that the argument was taking place at a public place in the work area and that she was only trying to defuse the situation and made the statement to the other employee only in an attempt to take their dispute away from a public area. The Commissioner's Designee agrees that the statement [Ms. Sanders] made could be open to interpretation, however, a very common understanding of such a statement is as an invitation to a fight and [Ms. Sanders] knew or should have known that was how it could be interpreted. At the very least, by making such a statement, [Ms. Sanders]'s action would have been a good faith error in judgment or discretion. Misconduct is defined at T.C.A. 50-7-303 (b) (3) and it does provide in part, that a good faith error in judgment or discretion is not work connected misconduct.

4

Perhaps if that was the extent of the situation in this case, that one statement, standing alone would not be work connected misconduct. However, it was not just that one statement standing alone. The evidence shows that the incident started with the other employee asking [Ms. Sanders] a question. The Commissioner's Designee does agree the back and forth between [Ms. Sanders] and the other employee seems strange and it is understandable how [Ms. Sanders] may have become frustrated with the other employee, but the evidence does not show that the [Ms. Neal] was acting in a threatening or argumentative way in asking her questions and in fact, actually turned away from where she had questioned [Ms. Sanders] and was walking away.

It was Claimant who escalated the incident to a confrontation by calling after the employee something to the affect that you want me to or I don't have to kiss your big fat behind. Now [Ms. Sanders] argued she did that only after the other employee seemed to pat her own behind to which [Ms. Sanders] assumed was a reference from the other employee to [Ms. Sanders]. Just as [Ms. Sanders] has argued that her statement was misinterpreted by the Employer, while the gesture described by [Ms. Sanders] could certainly be interpreted as described by [Ms. Sanders], it certainly could have been misinterpreted by [Ms. Sanders]. Whether or not [Ms. Sanders] interpreted what the other employee [did] correctly or not, there was no need for her to call after that employee what she did. The incident had basically ended and [Ms. Sanders] knew or should have known saying what she did would have an escalating effect. Furthermore, by intentionally escalating the incident and then standing up and arguing with the other employee makes the Employer's interpretation of [Ms. Sanders]'s statement much more likely than [Ms. Sanders]'s interpretation. When the incident is tak[en] as a whole and not merely as one (1) isolated statement, the evidence is sufficient to establish inappropriate work place conduct sufficient to rise to the level of work connected misconduct within the meaning of T.C.A. 50-7-303 (a) (2). The decision of the Appeals Tribunal that approved this claim is reversed. The claim is denied as of the date of filing,

5

June 25, 2013, and any benefits paid to [Ms. Sanders] are an overpayment to be repaid to the Agency.

Ms. Sanders filed a petition to rehear the Commissioner's Designee's decision, which was denied on November 13, 2013.

On December 17, 2013, Ms. Sanders, appearing *pro se*, filed a timely petition for judicial review of the agency decision. The hospital filed a response in opposition on February 7, 2014. The Tennessee Department of Labor also filed a response in opposition on March 3, 2014. The trial court heard oral argument on Ms. Sanders's petition on April 6, 2015. The trial court entered a written order denying the petition on May 19, 2015. Therein, the trial court concluded that:

> Based upon the record as a whole, the Court concluded that the decision of the Designee is supported by substantial and material evidence. The Court finds that there is evidence to support the finding that the employee's actions constituted work-related misconduct under T.C.A. 50-7-303. Finally, the Court holds that the decision of the Designee is neither arbitrary and capricious nor in excess of the agency's statutory authority.

Ms. Sanders filed a timely notice of appeal to this Court.

## Issue Presented

Ms. Sanders raises one issue in her brief.[5] As we perceive it, Ms. Sanders's sole issue is that there was not substantial and material evidence in the record to support the finding that

---

[5] Ms. Sanders's appellate brief is deficient in this case. First, her brief contains no citations to the record in either the statement of facts or argument sections. Rule 27 of the Tennessee Rules of Appellate Procedure provides that the brief of the appellant must contain "[a] statement of facts . . . with appropriate references to the record; . . . [and] [a]n argument . . . with citations to authorities and appropriate references to the record." Tenn. R. App. P. 27(a)(6), (7). Ms. Sanders also fails to include any citations to authority in the argument section of her brief other than a reference to Tennessee Code Annotated Section 50-7-303. This Court has repeatedly held that the failure to include citations to authorities and appropriate references to the record may render issues raised in the appellant's brief waived. *See Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.")

We note, however, that Ms. Sanders is proceeding *pro se* in this appeal, as she did in all prior proceedings. As this Court explained:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222,

6

her actions constituted work-related misconduct pursuant to Tennessee Code Annotated Section 50-7-303.

## Standard of Review

Tennessee Code Annotated Section 50-7-304(i) contains the standards by which chancery courts are to review administrative decisions involving claims for unemployment compensation. This Court employs the same standard of review applicable to the trial court.

---

227 (Tenn. Ct. App. 2000); *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997). The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n. 4 (Tenn. Ct. App. 1995).

The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. *Whitaker v. Whirlpool Corp.*, 32 S.W.3d at 227; *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d at 397. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9–10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Baxter v. Rose*, 523 S.W.2d 930, 939 (Tenn. 1975); *Winchester v. Little*, 996 S.W.2d 818, 824 (Tenn. Ct. App. 1998).

Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries. They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants. *Irvin v. City of Clarksville*, 767 S.W.2d at 652. Even though the courts cannot create claims or defenses for pro se litigants where none exist, *Rampy v. ICI Acrylics, Inc.*, 898 S.W.2d 196, 198 (Tenn. Ct. App. 1994), they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers. *Brown v. City of Manchester*, 722 S.W.2d 394, 397 (Tenn. Ct. App. 1986); *Usrey v. Lewis*, 553 S.W.2d 612, 614 (Tenn. Ct. App. 1977).

*Hessmer v. Hessmer*, 138 S.W.3d 901, 903–04 (Tenn. Ct. App. 2003). Because the record is not voluminous and there is only one genuine issue in this case, we will proceed to consider the merits of Ms. Sanders's appeal despite her failure to comply with the rules of this Court. See Tenn. R. App. P. 2 ("For good cause, including the interest of expediting decision upon any matter, the . . . Court of Appeals . . . may suspend the requirements or provisions of any of these rules in a particular case . . . .").

*See Armstrong v. Neel*, 725 S.W.2d 953, 955 & n.1 (Tenn. Ct. App. 1986). Tennessee Code Annotated Section 50-7-304(i)(2) provides that:

> The [court] may affirm the decision of the commissioner or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> > (A) In violation of constitutional or statutory provisions;
> >
> > (B) In excess of the statutory authority of the agency;
> >
> > (C) Made upon unlawful procedure;
> >
> > (D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> >
> > (E) Unsupported by evidence that is both substantial and material in the light of the entire record.

The issue in this case concerns only whether the agency's decision was supported by substantial and material evidence. Courts "generally interpret the substantial and material evidence requirement as requiring 'something less than a preponderance of the evidence, but more than a scintilla or glimmer.'" *Dickson v. City of Memphis Civil Serv. Comm'n*, 194 S.W.3d 457, 464 (Tenn. Ct. App. 2005) (quoting *Wayne Cnty. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988) (citations omitted)). "Substantial evidence is not limited to direct evidence but may also include circumstantial evidence or the inferences reasonably drawn from direct evidence." *Wayne Cnty.*, 756 S.W.2d at 280 (citing *Radio Officers Union v. NLRB*, 347 U.S. 17, 49, 74 S.Ct. 323, 340, 98 L.Ed. 455 (1954)). "An agency's factual determination should be upheld if there exists 'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Wayne Cnty.*, 756 S.W.2d at 279 (quoting *Southern Ry. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn.1984)). In addition, Tennessee Code Annotated Section 50-7-304(i)(3) provides:

> In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that of the commissioner's designee as to the weight of the evidence on questions of fact. No decision of the commissioner's designee shall be reversed, remanded or modified by the chancellor, unless for errors that

affect the merits of the final decision of the commissioner's designee.

## Discussion

In considering this appeal, we must determine whether substantial and material evidence supports the agency's finding that Ms. Sanders's actions constitute work-related misconduct so as to disqualify her from unemployment compensation. As this Court explained:

> A claimant is disqualified for unemployment benefits if it is determined that he or she was discharged for "misconduct connected with the claimant's work." Tenn. Code Ann. § 50-7-303(a)(2)(A).[6] The standard to be applied is that of the employment contract, whether express or implied, which fixes the employee's duties in connection with his work. **Weaver v. Wallace**, 565 S.W.2d 867, 870 (Tenn. 1978). An essential element of "misconduct connected with work" is a breach of a duty owed to the employer, as distinguished from society in general. **Id.** "Unless the employee's wrongdoing violates a duty owed to the employer, it cannot amount to that 'misconduct connected with his work' which serves to disqualify him to receive unemployment insurance benefits, although it may fully justify the employer in discharging him." **Id.**

> "It has long been settled in this state [ ] that a justifiable discharge is not, in and of itself, 'misconduct connected with his work' so as to disqualify an employee under the statute." **Cherry v. Suburban Mfg. Co.**, 745 S.W.2d 273, 275 (Tenn. 1988); *see also* **Trice v. Traughber**, 797 S.W.2d 886, 887 (Tenn. 1990). The circumstances may be such that an employee is deemed unsuitable for the work that he was doing, but that does not necessarily constitute grounds for denial of unemployment benefits. *See* **Mayes v. Culpepper**, No. 03A01-9801-CH-00032, 1999 WL 39505, at *2 (Tenn. Ct. App. E.S. Feb. 1, 1999).

---

[6] Tennessee Code Annotated Section 50-7-303 contains other disqualifying events that prevent a claimant from receiving unemployment compensation, including leaving the claimant's work "voluntarily without good cause connected with the claimant's work[,]" or failing to "apply for available, suitable work, when so directed by the employment office or the administrator, or to accept suitable work when offered, or to return to the claimant's customary self-employment, if any, when so directed by the administrator." Tenn. Code Ann. §50-7-303(a)(1), (3).

*Dura Auto. Sys., Inc. v. Neeley*, No. M2009-00908-COA-R3-CV, 2010 WL 204090, at *3 (Tenn. Ct. App. Jan. 21, 2010). Here, the Commissioner's Designee found that Ms. Sanders engaged in work-related misconduct by threatening another employee with violence, an action that violated the hospital's threatening behavior policy.

Although it is difficult to discern from Ms. Sanders's appellate brief, it appears that she disputes that her actions constituted work-related misconduct sufficient to disqualify her from unemployment compensation. As we perceive it, Ms. Sanders contends that the Commissioner's Designee erred in finding that she was the aggressor in the confrontation or that she acted in a threatening manner by suggesting that she and Ms. Neal take their dispute outside. As previously discussed, it is undisputed that at some point in her exchange with Ms. Neal, Ms. Sanders rose from her chair and indicated that the two should take the dispute "outside." However, the hospital does not appear to dispute that the first mention of taking the dispute outside came from Ms. Lofton, who recommended that Ms. Sanders and Ms. Neal relocate their dispute away from the nurses' station. Ms. Sanders argues that she did not indicate her desire to take the argument outside in a threatening manner, but instead merely wanted to remove the dispute from the nurses' station at Ms. Lofton's request. In addition, Ms. Sanders argues that she was not the aggressor in the situation, as Ms. Neal allegedly walked toward the nurses' station in a threatening manner with her fist clenched.

As an initial matter, we cannot conclude that the Commissioner's Designee erred in finding that Ms. Sanders, rather than Ms. Neal, was the aggressor in the situation. At the telephonic hearing, Ms. Lofton and Ms. Sanders gave differing versions of the events that took place. According to Ms. Sanders, Ms. Neal approached in a threatening manner with her fist clenched. Ms. Lofton testified that she did not witness Ms. Neal clench her fist and that Ms. Neal did not approach in a threatening manner. The Commissioner's Designee clearly credited Ms. Lofton's testimony and found that Ms. Neal did not approach Ms. Sanders in a threatening manner. Indeed, the Commissioner's Designee found that Ms. Neal was leaving the nurses' station when Ms. Sanders escalated the relatively minor dispute by calling back to Ms. Neal. "Findings of fact made by the agency may not be reviewed *de novo* by the trial or appellate courts, and courts should not substitute their judgment for that of the agency as to the weight of the evidence on factual issues." *Sanifill of Tenn., Inc. v. Tenn. Solid Waste Disposal Control Bd.*, 907 S.W.2d 807, 810 (Tenn. 1995) (*Southern Ry. Co. v. Tenn. Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn.1984)). This Court is not permitted to reweigh the evidence or substitute our judgment for that of the administrative agency. *Miller v. Tenn. Bd. of Nursing*, 256 S.W.3d 225, 229 (Tenn. Ct. App. 2007). Given the two competing accounts of whether Ms. Sanders or Ms. Neal was the aggressor, we must conclude that the agency did not err in adopting Ms. Lofton's version of events. Accordingly, there is substantial and material evidence to support the Commissioner's Designee's finding that Ms. Neal did not approach Ms. Sanders in a threatening manner.

Ms. Sanders next argues that the agency erred in interpreting Ms. Sanders's request to take the dispute "outside" as an invitation for a physical confrontation. Instead, Ms. Sanders argues that the only reasonable interpretation of her statement was to remove the argument to another location. To this end, Ms. Sanders argues that the phrase "take it outside" does not denote an invitation for physical violence, insisting that the phase means "to carry out . . . a food delivery." We respectfully disagree. The Tennessee Court of Criminal Appeals has previously considered situations where invitations to take a dispute outside resulted in physical altercations once the disputing parties left the premises. *See State v. Smythers*, No. E2001-02806-CCA-R3CD, 2003 WL 21145428, at *4 (Tenn. Crim. App. May 19, 2003) (involving a statement by one party to a dispute to "take it outside," at which point, the disputing parties left the premises and engaged in a physical alteration outside); *Holland v. State*, 1993 WL 273968, at *1 (Tenn. Crim. App. July 22, 1993) (involving an invitation to "take it outside" that resulted in a "scuffle"). Additionally, this Court has previously considered the colloquial use of a word or phrase in determining its meaning. *See Danelz v. Gayden*, No. W2010-02308-COA-R3JV, 2011 WL 2567742, at *8 (Tenn. Ct. App. June 29, 2011) (noting that the Court of Appeals has previously considered the colloquial sense of a word); *Cooper v. Town of Shelbyville*, 57 S.W. 429, 434 (Tenn. Ct. App. 1899) (considering "the ordinary or colloquial sense" of an expression); *see also* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 174 (3d ed. 2011) (noting that "[a]lthough there are no certain guides . . . , the *colloquial* meaning of the words . . . is itself one of the best tests of purpose") (quoting *Brooklyn Nat'l Corp. v. Commissioner*, 157 F.2d 450, 451 (2d Cir. 1946)). Furthermore, this Court "is not required to check common sense at the courthouse door, and we decline to do so." *Dattel Family Ltd. P'ship v. Wintz*, 250 S.W.3d 883, 892 (Tenn. Ct. App. 2007). Accordingly, we recognize that the colloquial meaning of the phrase "take it outside," when uttered in the heat of a dispute, may connote an invitation for a physical confrontation. Thus, we cannot conclude that the Commissioner's Designee erred in finding that Ms. Sanders' statement, coupled with the surrounding circumstances, constituted a threat prohibited by the hospital's threatening behavior policy.

Finally, we address Ms. Sanders's contention that regardless of what transpired during the dispute, her actions were simply insufficient to constitute workplace misconduct. Although not cited by any of the parties for this purpose, we note that the facts at issue in this case are highly analogous to the situation presented in *Armstrong v. Neel*, 725 S.W.2d 953 (Tenn. Ct. App. 1986). In *Armstrong*, the plaintiff employee was discharged for allegedly threatening a co-worker. According to the Opinion, the plaintiff's co-worker shouted at the plaintiff to "shut your [expletive] mouth and I mean now." The plaintiff took offense and confronted the co-worker, telling the co-worker that he "would whip his ass if he talked [to]

me that way again." No physical altercation ever occurred, but the plaintiff's employment was eventually terminated for threatening a fellow employee. *Id.* at 954.

The plaintiff filed a claim for unemployment benefits, which was ultimately denied on the basis that the plaintiff was discharged for work-related misconduct. *Id.* The plaintiff appealed, and the Court of Appeals reversed, holding that the plaintiff's conduct was insufficient to establish work-related misconduct. *Id.* at 957. The Court of Appeals first adopted the following definition for work-related misconduct:

> [C]onduct evincing such wil[l]ful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertences or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

*Id.* at 956 (quoting ***Boynton Cab Co. v. Neubeck***, 237 Wis. 249, 296 N.W. 636, 640 (1941)).

The Court concluded that applying the above standard to the plaintiff's conduct did not establish work-related misconduct. According to the Court:

> We do not condone the conduct of either [the plaintiff] or [the co-worker]. However, we do not believe that [the plaintiff's] conduct materially interfered with his employer's business. While it may have provided the company with an adequate basis to discharge him, we have concluded that this was an isolated incident that does not warrant denying [the plaintiff] unemployment compensation pursuant to Tenn. Code Ann. § 50-7-303(a)(2)(B).
>
> [The plaintiff] did not precipitate this incident. It was initiated by [the co-worker's] demeaning comments made in front of [the plaintiff's fellow] co-workers. [The plaintiff's] comments were directed toward a co-worker, not a supervisor, in a work environment where less than decorous language could

be expected. His threats were clearly made in the heat of the moment and were conditional in nature. The incident was brief and did not disrupt the work at the plant. While there was a company rule that "fighting, threatening, or abusing employees" could be grounds for termination, [the plaintiff] had never been warned by his superiors that this type of conduct would result in his immediate discharge.

The Board of Review itself has determined that similar conduct did not warrant denial of unemployment compensation. The Board determined that an employee who was fired after threatening to "whip" a co-worker was not disqualified pursuant to Tenn. Code Ann. § 50-7-303(a)(2)(B) when it was shown that the co-worker brought on the altercation. *See* Board of Review, Dec. No. 40–BR–15 (3/9 UCIS Ben.Ser., 4383—Tenn.R), 1C Uempl.Ins.Rep. (CCH) ¶ 1970.654.

Likewise, courts of other jurisdictions, adopting the *de minimis* rationale, have found that a provoked employee's conditional threats or other conduct which did not materially interfere with the work did not provide a basis to deny unemployment compensation benefits. ***Davis v. Florida Unemployment Appeals Commission***, 472 So.2d 800, 802 (Fla. Dist. Ct. App. 1985); ***Budding v. Iowa Department of Job Service***, 337 N.W.2d 219, 222–23 (Iowa Ct. App. 1983);[7] ***Windsperger v. Broadway Liquor Outlet***, 346 N.W.2d 142, 145 (Minn. 1984); ***Oman v. Daig Corp.***, 375 N.W.2d 533, 538 (Minn. App. 1985); [8] ***First Family Federal Savings and Loan Assoc. v. Unemployment Compensation Board of Review***, 68 Pa.Commw. 578, 449 A.2d 870, 872–73 (1982); and ***Nehi***

[7] ***Budding*** was expressly overruled in ***Myers v. Employment Appeal Bd.***, 462 N.W.2d 734, 738 (Iowa Ct. App. 1990), which held that it was improper for a court to overturn an agency's factual finding regarding whether vulgar language constitutes misconduct. Regardless of the present precedential value of ***Budding***, ***Armstrong*** remains good law in Tennessee.

[8] The holdings in ***Windsperger*** and ***Oman*** that an "isolated hotheaded incident" was insufficient to constitute work-related misconduct in the absence of evidence that the tantrum adversely affected her employer's business, was superseded by statute, as recognized in ***Potter v. N. Empire Pizza, Inc.***, 805 N.W.2d 872 (Minn. Ct. App. 2011). ***Id.*** at 875–76 (citing Minn. Stat. § 268.095, subd. 6 (indicating that the fact that the employee's conduct was "only a single incident . . . is an important fact that must be considered")). Accordingly, pursuant to current Minnesota law, the fact that the alleged misconduct involved only a single incident does not prevent an agency from determining that it constituted work-related misconduct, but instead is an important consideration.

*Bottling Co. v. Unemployment Compensation Board of Review*, 27 Pa.Commw. 251, 366 A.2d 594, 596 (1976).

*Armstrong*, 725 S.W.2d at 957.

Although *Armstrong* is highly analogous to the facts in the case-at-bar, we cannot conclude that it supports reversal of the Commissioner's Designee's decision that Ms. Sanders's actions constituted work-related misconduct. An important factor in the *Armstrong* decision and many of the decisions that it cites, is that the employee had adequate provocation for his or her threat of violence. *See Armstrong*, 725 S.W.2dat 954 (involving a threat of violence only after a co-worker, using vulgar language, shouted at the employee to be quiet); *see also Davis*, 472 So.2d at 802 (involving a threat of violence made by an employee after a co-worker physically assaulted the plaintiff); *First Family*, 449 A.2d 870, 871 (involving an incident wherein a supervisor slapped the employee's hand and the employee responded that "if she touched him again, he would reciprocate"); *Nehi Bottling*, 366 A.2d at 596 (involving a threat of violence by the employee only after a fellow co-worker "abusive[ly] and profane[ly]" discharged the employee without authority, after the employee was injured in a work-place accident). Here, as previously discussed, the Commissioner's Designee found that Ms. Neal was not "acting in a threatening or argumentative way" in the exchange, and in fact, had walked away from the dispute prior to Ms. Sanders's escalation. Because we have affirmed the Commissioner's Designee's finding that Ms. Neal was not the aggressor in the situation, we cannot conclude that Ms. Sanders had adequate provocation to escalate the incident to a threat of violence.

Moreover, the Court in *Armstrong* specifically relied upon the fact that: "While there was a company rule that 'fighting, threatening, or abusing employees' could be grounds for termination, [the plaintiff] had never been warned by his superiors that this type of conduct would result in his immediate discharge." *Armstrong*, 725 S.W.2d at 957. The same is not true in this case. Ms. Lofton testified at the telephonic hearing that the hospital's employee code of conduct, statement of performance, and handbook all indicate that threatening behavior violated hospital policy. Ms. Lofton also testified that employees are aware that a violation of the hospital's threatening behavior policy "can be a ground[] for termination." Nothing in the record or in Ms. Sanders's brief can be fairly read to dispute Ms. Lofton's testimony that Ms. Sanders was aware that threatening behavior alone could be a ground for termination. As previously discussed, work-related misconduct includes the "disregard of standards of behavior which the employer has the right to expect of his employee." *Id.* at 956. Because there is no dispute that Ms. Sanders knew of the hospital's threatening behavior policy, we must conclude that Ms. Sanders's failure to abide by this policy constitutes substantial and material evidence to support the Commissioner's Designee's finding that Ms. Sanders committed work-related misconduct.

14

## Conclusion

The judgment of the Chancery Court of Shelby County is affirmed, and this cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellant Virginia H. Sanders. Because Ms. Sanders is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE